IN THE UNITED STATES FEDERAL COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TOYOTA LEASE TRUST** | : | |
| | : | |
| **And** | : | |
| | : | |
| **LEXUS FINANCIAL SERVICES,** a division | : | |
| TOYOTA MOTOR CREDIT CORPORATION | : | CIVIL ACTON NO.: |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| **UNITED AUTO COLLISION, INC.** | : | |
| Defendant. | : | |
| | : | |

## COMPLAINT

### Jurisdiction

1.     Jurisdiction of this Court is based on diversity of citizenship.  28 U.S.C. §1332.

2.     Plaintiff, Toyota Lease Trust (TLT) is a Delaware Statutory Trust organized and existing under 12 Del.C. §3801, *et. seq*., with its registered Delaware Agent, U.S. Bank Trust National Association, 300 Delaware Avenue, 9th Floor, Wilmington, DE. 19801.  The Titling Trustee for TLT is TMTT, Inc., a Delaware Corporation with offices and principal place of business at 190 South LaSalle St., 7th Fl., Chicago, IL  60603.

3.     Plaintiff, Toyota Motor Credit Corporation, is a California corporation with offices and principal place of business at 6565 Headquarters Drive, Plano, TX 75024.

4.     Defendant, United Auto Collision, Inc., is a Pennsylvania corporation with offices and principal place of business at 3913 Germantown Avenue, Philadelphia, PA 19140.

5.     The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

6.    Venue in this District is proper under 28 U.S.C. §1391(d) because the defendant is located in and conducts substantial business within this District, and under §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## COUNT I
### 2015 Lexus RX 350

7.    On or about April 28, 2014, an individual named Tamara Singletary entered into a Closed-End Lease Agreement (Lease I) for the lease of a 2015 Lexus RX 350, VIN 2T2BK1BA4FC253315.  (A copy of Lease I is attached hereto as Exhibit "A.")

8.    Lease I was assigned to Toyota Lease Trust.  Lexus Financial Services, a division of plaintiff, Toyota Motor Credit Corporation, serviced the Lease on behalf of Toyota Lease Trust.

9.    The Commonwealth of Pennsylvania Certificate of Title identifies Toyota Lease Trust as the owner of the vehicle and Tamara Singletary as the vehicle's lessee.  (A copy of the Certificate of Title is attached hereto as Exhibit "B.")

10.    Tamara Singletary defaulted on Lease I by failing to make the required payments.  In any case, the Lease expired, by its terms, on January 27, 2017, resulting in Toyota Lease Trust having the exclusive right to possession of the vehicle.

11.    On or about July 12, 2016, the defendant came into possession of the vehicle.

12.    On information and belief, and based solely on defendant's claims, defendant towed the vehicle to defendant's repair shop following an accident.

13.    At or around the time of the accident, Tamara Singletary apparently abandoned the vehicle.

14.    Although the defendant had access to information by which it easily could have identified Toyota Lease Trust as the true and rightful owner of the vehicle, defendant wrongfully either failed to access that information in timely manner or failed to act in timely fashion on the information it obtained.

15.     Defendant failed to notify Toyota Lease Trust that it was in possession of the vehicle until almost three years later, on April 19, 2019, when it sent a copy of a letter to Toyota Lease Trust demanding that it turn over the vehicle title or pay storage charges of $36,645.00 (1012 days @ $35 / day) plus an additional $1,225.00 for repairs.  (A copy of said letter is attached as Exhibit "C" hereto.)

16.     Defendant's April 19, 2019, letter purports to be a "final notice," when in fact it was the only notice given to Toyota Lease Trust that defendant had been in possession of the vehicle since July 12, 2016.

17.     On information and belief, defendant's so-called "final notice" was in furtherance of a scheme by which the defendant sought to acquire title to the vehicle so that the defendant could sell it and pocket the proceeds.

18.     On information and belief, defendant deliberately delayed notifying Toyota Lease Trust until its alleged storage charges had accumulated to the point that they exceeded the value of the vehicle, in the hope that plaintiffs would simply abandon it.

19.     Plaintiffs, though their attorney, responded to defendants "final notice" demanding that defendant restore the vehicle to plaintiffs.  (A copy of letter dated May 2, 2019, is attached hereto as Exhibit "D.")

20.     Defendant never responded to said letter and has refused to turn over the vehicle, for which reason plaintiffs have filed an action for replevin in the Court of Common Pleas of Philadelphia County, Civil Division, at June Term 2019, Case No. 005842.

21.     As a direct result of the defendant's conduct as aforesaid, plaintiffs have suffered and continue to suffer the loss of use of the vehicle and the diminution of its value over time.

22.     Defendant's conduct in intentionally and/or recklessly failing to notify the plaintiffs of its possession of the vehicle, converting the vehicle to its own use, attempting to obtain title to the vehicle for the purpose of reselling it, refusing to return the vehicle and instead holding it hostage for

its improper storage charges is so outrageous as to justify the imposition of punitive damages against the defendant.

23.     As a direct and proximate result of the defendant's conduct, plaintiffs have suffered and will continue to suffer damages in the form of:

      a.     damages representing the reasonable rental value of the vehicle for the period beginning July 12, 2016, until such time as the vehicle is restored to plaintiffs' possession;

      b.     damages representing the diminution in fair market value of the vehicle over the same period;

      c.     punitive damages in an amount determined by the jury; and

      d.     interest, attorneys' fees, costs and such other relief as the Court deems just and proper.

WHEREFORE, plaintiff, Toyota Lease Trust requests judgment in its favor in a total amount in excess of $75,000.00, together with interest, costs, attorneys' fees and such other relief as may be appropriate.

JURY TRIAL DEMANDED.

## COUNT II
### 2013 Toyota Corolla

24.     The preceding paragraphs are incorporated by reference herein.

25.     On or about May 11, 2013, an individual by the name of Joan Matilda Coley entered into a 36 month Closed End Lease Agreement (Lease II) for the lease of a 2013 Toyota Corolla, VIN 2T1BU4EE5DC049845.  (A copy of Lease II is attached hereto as Exhibit E.)

26.     As in the case of Lease I, Lease II was assigned to Toyota Lease Trust.

27.     As in the case of Lease I, the Certificate of Title identifies Toyota Lease Trust as the owner of the vehicle.  (A copy of the Certificate of Title is attached as Exhibit F.)

4

28.     By its terms, Lease II ended May 11, 2016, such that Toyota Lease Trust thereafter had the exclusive right to possess the vehicle.

29.     Toyota Lease Trust, however, was unaware of the location of the vehicle until it received a coy of an April 29, 2019, letter from the defendant, stating that defendant had been in possession of the vehicle since February 15, 2017, and demanding payment of $26,075.00 in storage charges.  (A copy of said letter is attached hereto as Exhibit G.)

30.     Although the April 29, 2019 letter purported to be a "final notice," it was in fact the only notice given to Toyota Lease Trust that defendant had been in possession of the vehicle since February 15, 2017.

31.     Because the alleged storage charges exceeded the value of the vehicle when new, Toyota Lease Trust did not respond to the April 29, 2019, letter.

32.     Defendant easily could have ascertained the identity of the owner of the vehicle when it came into possession of it, but deliberately delayed notification of Toyota Lease Trust in furtherance of its scheme to acquire title to the vehicle so that it could resell it.

33.     In furtherance of that scheme, defendant petitioned the Court of Common Pleas of Philadelphia County to acquire title to the vehicle.  (A copy of the Petition served on Toyota Lease Trust is attached hereto as Exhibit H.)

34.     Defendant served a copy of said Petition on Toyota Lease Trust because it knew from checking PennDOT records that Toyota Lease Trust was the true owner of the vehicle.

35.     On information and belief, as evidenced herein, defendant has adopted a scheme that, when it comes into possession of a vehicle that has been abandoned, it deliberately delays notifying the owner (Lessor) of the vehicle's whereabouts until the accumulated storage charges exceed the fair market value of the vehicle, in the hope that the owner will abandon it rather than agree to pay defendant's excessive storage charges.

36.     Defendant's intentional and/or reckless failure to provide timely notification to the plaintiff, demanding excessive and unreasonable storage charges and obtaining title to the vehicle so that it could resell it and pocket the proceeds, is so outrageous as to justify the imposition of punitive damages against the defendant.

37.     As a direct and proximate result of the defendant's conduct, plaintiff has suffered damages in excess of the arbitration limits of this Court in the form of:

a.     damages representing the reasonable rental value of the vehicle from February 15, 2017, until the vehicle was sold;

b.     loss of use of the vehicle and loss of proceeds plaintiff could have realized through sale of the vehicle;

c      punitive damages in an amount determined by the jury; and

d.     interest, attorney fees, costs, and such other relief as the Court deems just and proper.

WHEREFORE, plaintiff, Toyota Lease Trust, requests judgment in its favor in a total amount in excess of $75,000.00, together with interest, costs, attorneys' fees and such other relief as may be appropriate.

JURY TRIAL DEMANDED.

## COUNT III
## 2014 Toyota Camry

38.     The preceding paragraphs are incorporated by reference herein.

39.     On or about September 4, 2018, an individual by the name of Nader Rizk purchased a used 2014 Toyota Camry, VIN 4T1BF1FK8EU812406, pursuant to a retail installment contract with 6101 Automotive, Inc. ( A copy of said contract is attached as Exhibit "I" hereto.)

40.     The installment contract was assigned to Toyota Motor Credit Corporation, which was identified as the lienholder in Pa.DOT records.  (See Exhibit "J" hereto.)

41.     On information and belief, based solely on the documents included in Exhibit "J," defendant came into possession of the vehicle on or about January 4, 2019.  Defendant apparently

6

towed the vehicle from a business parking lot where it had been illegally parked and/or abandoned by its owner.

42.     Toyota Motor Credit Corporation was unaware of the location of the vehicle until it received a copy of an October 25, 2019, letter from the defendant stating that defendant had been in possession of the vehicle since January 4, 2019, and demanding payment of $16,206.75 in storage charges at $45.00/day plus 22.5% Philadelphia Parking Tax.  (See Exhibit "J" hereto.)

43.     Although the October 25, 2019, letter purported to be a "final notice," it was in fact the only notice given to Toyota Motor Credit Corporation that defendant had been in possession of the vehicle since January 4, 2019.

44.     On or about October 28, 2019, defendant filed a claim in the Court of Common Pleas of Philadelphia County to obtain title to the vehicle.  (See Exhibit "J" hereto.)

45.     In its filing, defendant identified the value of the vehicle as $12,964.00, which was less than the amount of the alleged $16,206.75 in storage charges.

46.     On information and belief, as evidenced herein, defendant has adopted a scheme that, when it comes into possession of a vehicle that apparently has been abandoned by its owner, it deliberately delays notification of the lienholder until defendant's accumulated storage charges exceed the value of the vehicle so that defendant can sell the vehicle and pocket the proceeds.

47.     Defendant easily could have identified the lienholder at or about the time it came into possession of the apparently abandoned vehicle, but either deliberately failed to do so or deliberately failed to notify the lienholder in timely fashion so that it could recover the vehicle.

48.     Defendant's intentional and/or reckless failure to notify the lienholder in furtherance of its scheme to deprive the lienholder of the vehicle so that defendant could sell it and pocket the proceeds is so outrageous as to justify, the imposition of punitive damages.

49.     As a proximate result of defendant's conduct, plaintiff has suffered damages in the form of:

(a)     damages representing the value of the vehicle from the time defendant came into possession of it;

(b)     loss of use of the vehicle, and loss of proceeds plaintiff could have realized from the sale of the apparently abandoned vehicle;

(c)     punitive damages as determined by the jury; and

(d)     interest, attorneys' fees, costs and such other relief as the Court deems just and proper.

WHEREFORE, plaintiff, Toyota Motor Credit Corporation, requests judgment in its favor in a total amount in excess of $75,000.00, together with interest, costs, attorneys' fees and such other relief as may be appropriate.

JURY TRIAL DEMANDED.

Respectfully submitted,

THOMSON, RHODES & COWIE, P.C.

Date: 12/20/2019          By _____

Steven B. Kantrowitz, Esquire
PA I.D. #25737
Thomson, Rhodes & Cowie, P.C.
1055 Virginia Drive, Suite 203
Fort Washington, PA  19034
(215) 496-9400
skantrowitz@trc-law.com

Attorneys for plaintiffs

W:\SBK\80025 Toyota Lease Trust\federal court pleadings.Complaint.docx

"EXHIBIT A"

Customer Completed Copy - ███

# MOTOR VEHICLE CLOSED-END LEASE AGREEMENT

⬣ LEXUS
FINANCIAL SERVICES

**1. Parties**    ☒ Monthly-Pay Lease    ☐ One-Pay Lease    Lease Date:   04/28/2014

**LESSEE AND CO-LESSEE NAME AND LESSEE'S BILLING ADDRESS**
TAMARA SINGLETARY
███ 19120

**LESSOR (DEALER) NAME AND ADDRESS**
DANIEL MARTIN, INC.
568 WEST LANCASTER AVENUE
HAVERFORD, PA 19041

**VEHICLE GARAGING ADDRESS**
N/A

This is a Lease Agreement ("Lease") for the Vehicle described below. The words "you", "your" and "yours" refer to the Lessee and any Co-Lessee. The words "we", "us" and "our" refer to the Lessor, and after assignment, to the Toyota Lease Trust ("TLT") and any subsequent assignee. Lexus Financial Services, a division of Toyota Motor Credit Corporation ("LFS") will be servicing this Lease on behalf of TLT. By signing this Lease, you are leasing this Vehicle according to all of the terms of this Lease.

**2. Description of Leased Vehicle**
You are leasing from us, and have received in satisfactory condition, the following Vehicle:

Leased Vehicle

2015 Lexus RX 350 AWD 4dr

| New, Used, or Demo | Vehicle Identification Number | Primary Use | Odometer Mileage |
|---|---|---|---|
| New | 2T2BK1BA4FC253315 | Personal, Family or Household | 30 |

## FEDERAL CONSUMER LEASING ACT SEGREGATED DISCLOSURES

| 3. Amount Due at Lease Signing or Delivery (Itemized in Section 7) | 4. Payments | 5. Other Charges (Not Part of Your Monthly Payment or Total Lease Payment) | 6. Total of Payments (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| | **a. Monthly Payments (Monthly-Pay Lease)** Your first Monthly Payment of $ 549.49 is due on 04/28/2014, followed by 32 payments of $ 549.49 due on the 28th of each month. The total of your Monthly Payments is: $ 18,133.17 | Disposition fee (if you do not purchase the Vehicle) $ 350.00 | |
| $ 1,078.93 | **b. Total Lease Payment (One-Pay Lease)** Your Total Lease Payment of $ N/A is due on N/A | Total $ 350.00 | $ 19,012.61 |

## Itemization of Amount Due at Lease Signing or Delivery

| 7. Amount Due at Lease Signing or Delivery | | 8. How the Amount Due at Lease Signing or Delivery Will Be Paid | |
|---|---|---|---|
| a. Capitalized Cost Reduction | $ 526.52 | a. Net Trade-in Allowance | $ 0.00 |
| b. First Monthly Payment | $ 549.49 | b. Rebates and Noncash Credits | $ 500.00 |
| c. Total One-Pay Lease Payment | $ N/A | c. Amount to Be Paid in Cash | $ 578.93 |
| d. Refundable Security Deposit | $ 0.00 | | |
| e. Title Fees | $ N/A | | |
| f. Registration Fees | $ N/A | | |
| g. License Fees | $ N/A | | |
| h. Tax on Capitalized Cost Reduction | $ 2.92 | | |
| i. Acquisition Fee | $ N/A | | |
| j. N/A | $ N/A | | |
| k. N/A | $ N/A | | |
| l. N/A | $ N/A | | |
| m. N/A | $ N/A | | |
| n. Total | $ 1,078.93 | d. Total | $ 1,078.93 |

Lexus Financial Services is a trade name for Toyota Motor Credit Corporation and service mark used by Toyota Lease Trust.

Page 1 of 9

6305 (10/19.12)

Customer Completed Copy - ███

True and Accurate Completed Copy - UCC Non-Authoritative Copy

True and Accurate Completed Copy - UCC Non-Authoritative Copy

Customer Completed Copy - █████

# MOTOR VEHICLE CLOSED-END LEASE AGREEMENT

LEXUS
FINANCIAL SERVICES

## Your Payment Is Determined As Shown Below:

**9. Payment Determination**

| | |
|---|---|
| a. **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ 43,955.30 ) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance) For an itemization of this amount, see Section 13. | $ 44,861.85 |
| b. **Capitalized Cost Reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost. | − $ 526.52 |
| c. **Adjusted Capitalized Cost.** The amount used in calculating your Base Periodic Payment. | = $ 44,335.33 |
| d. **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Periodic Payment. | − $ 31,241.10 |
| e. **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. | = $ 13,094.23 |
| f. **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts. | + $ 3,242.25 |
| g. **Total of Base Periodic Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge. | = $ 16,336.48 |
| h. **Lease Payments.** The number of periodic payments in your Lease. | ÷ 33 |
| i. **Base Periodic Payment.** | = $ 495.04 |
| j. **Monthly Sales/Use Tax.** | + $ 54.45 |
| k. N/A | + $ N/A |
| l. **Total Payment.** For <u>Monthly-Pay Leases</u>, this is your Total Monthly Payment. For <u>One-Pay Leases</u>, this is your Total One-Pay Lease Payment. | = $ 549.49 |

> **Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**10. Excessive Wear and Use**
You will be responsible for excessive wear charges based on our standards for normal use and for mileage in excess of   27500   miles over the odometer reading disclosed in Section 2, at a rate of $.   0.25   per mile.

**11. Purchase Option at the End of the Lease Term**
You have the option to purchase the Vehicle at the end of the Lease Term for   $ 31,241.10

**12. Other Important Terms**
Review this Lease for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

## Itemized Gross Capitalized Cost, Lease Term, Insurance, Fees, and Warranties

**13. Itemization of Gross Capitalized Cost**
You will pay for the following items over the Lease Term:

| | |
|---|---|
| a. Agreed Upon Value of the Vehicle | $ 43,955.30 |
| b. Taxes | + $ N/A |
| c. Initial Title, License, and Registration Fees | + $ 56.00 |
| d. Mechanical Breakdown Protection | + $ N/A |
| e. Maintenance Agreement | + $ N/A |
| f. Excess Wear and Use Protection Plan | + $ N/A |
| g. Credit Life and/or Disability Insurance | + $ N/A |
| h. Outstanding Prior Credit or Lease Balance | + $ N/A |
| i. Acquisition Fee | + $ 700.00 |
| j. Electronic Filing Fee [14.55] & Tire [5.00] | + $ 19.55 |
| k. Document Fee | + $ 131.00 |
| l. Gross Capitalized Cost | = $ 44,861.85 |

Customer Completed Copy - █████

True and Accurate Completed Copy - UCC Non-Authoritative Copy

Customer Completed Copy – ▮▮▮▮▮

# MOTOR VEHICLE CLOSED-END LEASE AGREEMENT



14. **Lease Term and Scheduled Maturity Date** ......
    The Lease Term is   33   months, and the Scheduled Maturity Date is     01/27/2017

15. **Required Vehicle Insurance**
    You must provide the following insurance during the Lease Term and specify the Lessee and/or Co-Lessee as an insured driver. No other types of insurance are required.
    a. primary automobile liability insurance with minimum limits for bodily injury or death of:
       i.   $     15,000.00 for any one person; and
       ii.  $     30,000.00 for any one accident; and
       iii. $      5,000.00 for property damage, and
    b. physical damage insurance for the full value of the Vehicle, with a maximum deductible of $1,000.

    See Section 22 for more information.

    You have provided us today with the following insurance information:

    ALLSTATE
    Insurance Provider
    ALLSTATE
    Agent's Name
    9 W HIGHLAND AVE  PHILADELPHIA, PA 19118
    Agent's Address

    928289274
    Policy No.
    (215) 242-6100
    Agent's Phone No

    Verified by Dealer _____

                                                                    A
    Lessee _____          Co-Lessee     N/A
                                B                                          B

16. **Estimated Official Fees and Taxes** ......
    This is an estimate of the total amount you will pay over the Lease Term for official and license fees, registration, title, and taxes (including personal property taxes), whether included in your Total Payment (Section 9.I), the Amount Due at Lease Signing or Delivery (Section 7) or billed separately. The actual total of Official Fees and Taxes may be higher or lower than this estimate depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed. This estimate is based on your current address and may increase if you move or if tax rates change. You are responsible for paying any increases. See Section 26 for additional information.

    Estimated Total $     1,870.32

17. **Vehicle Maintenance and Damage**
    You are responsible for all maintenance, repair, service, and operating expenses of the Vehicle. You agree to follow the owner's manual and maintenance schedule, and to provide us with written proof of such maintenance. You are responsible for all damage to the Vehicle and for its loss, seizure or theft. You must tell us immediately if any of these events happen and cooperate with your insurance company.

18. **Warranty** ......
    If the Vehicle is a new or a demo Vehicle, the Vehicle is subject to the standard new warranty from the manufacturer. If the Vehicle is used, it is not covered by a warranty unless one of the following boxes is checked:
    ☐ Remainder of standard new vehicle warranty from manufacturer
    ☐ Used vehicle warranty from manufacturer
    Except for any express warranty above, YOU ARE LEASING THE VEHICLE "AS IS." WE MAKE NO WARRANTY AS TO THE VEHICLE'S CONDITION, MERCHANTABILITY, SUITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. We do not exclude the implied warranties of merchantability or fitness for a particular purpose for vehicles in Kansas, Massachusetts, Vermont and West Virginia.

Lexus Financial Services is a trade name for Toyota Motor Credit
Corporation and service mark used by Toyota Lease Trust.

Page 3 of 9

6J0F (10/10-12)

Customer Completed Copy – ▮▮▮▮▮

Customer Completed Copy – ▆▆▆▆▆▆

# MOTOR VEHICLE CLOSED-END LEASE AGREEMENT

**LEXUS FINANCIAL SERVICES**

### 19. Optional Insurance and Other Products

You are not required to buy any of the Optional Insurance or Other Products listed below to enter into this Lease, and they are not a factor in our credit decision. These products will not be provided unless the appropriate box is checked, all information is filled in, you sign below, and you are accepted by the Provider. By signing for a product below, you agree that you have received a notice of the terms of the product, and you want to obtain the product for the premium or charge shown. A portion of the premium or charge shown may be retained by the Lessor (Dealer). Optional Credit Life Insurance and Credit Disability Insurance are not available with One-Pay Leases.

In the event the Lease is terminated as a result of total loss or theft resulting in a total loss of the Vehicle (Section 27), the Early Termination Charge (Section 31b) may be different than the actual cash value of the Vehicle as determined by your insurance. If you have maintained the Required Insurance, we will waive the Early Termination Charge (Section 31b) after we receive the insurance proceeds and you have paid any deductible amounts. You will remain responsible for any other amounts due under Section 31.

☐ Optional Credit Life Insurance
N/A
N/A
Insured(s)

$ N/A
Beginning Coverage
Lessee                    N/A                              C
N/A
Provider
$ N/A
Premium
Co-Lessee                 N/A                              C

☐ Optional Credit Disability Insurance
N/A
N/A
Insured(s)

$ N/A
Maximum Monthly Coverage
Lessee                    N/A                              D
N/A
Provider
$ N/A
Premium
Co-Lessee                 N/A                              D

☐ Optional Mechanical Breakdown Protection
N/A          N/A
Miles/Coverage     Months
Lessee                    N/A                              E
N/A
Provider
$ N/A
Premium or Charge
Co-Lessee                 N/A                              E

☐ Optional Maintenance Agreement
N/A
Provider
Lessee                    N/A                              F
$ N/A
Premium or Charge
Co-Lessee                 N/A                              F

☐ Optional Excess Wear and Use Protection Plan
N/A
Provider
Lessee                    N/A                              G
$ N/A
Premium or Charge
Co-Lessee                 N/A                              G

**Total Premiums and Charges**  $ _____ N/A _____

Lexus Financial Services is a trade name for Toyota Motor Credit Corporation and service mark used by Toyota Lease Trust.

6305 (10/13/12)

True and Accurate Completed Copy - UCC Non-Authoritative Copy

True and Accurate Completed Copy - UCC Non-Authoritative Copy

Customer Completed Copy – ▆▆▆▆▆▆

Customer Completed Copy - ████

# MOTOR VEHICLE CLOSED-END LEASE AGREEMENT

 LEXUS
FINANCIAL SERVICES

## YOUR OBLIGATIONS DURING THIS LEASE

20. **Prohibited Uses of the Vehicle.** You agree that you will not, nor permit others to:
   a. use the Vehicle in any illegal manner, in violation of your insurance policy, or without the insurance coverage described in Sections 15 and 22;
   b. alter the Vehicle without our written consent. Any accessions to the Vehicle become our property;
   c. subject the Vehicle to any lien, seizure or other involuntary transfer;
   d. use the Vehicle to transport goods or people for hire.
   e. remove the Vehicle from the state where it was first titled, for more than 30 days, without our written consent;
   f. take the Vehicle outside the United States (except to Canada or Mexico for less than 30 days, if you have our consent and have provided us with proof of insurance); or
   g. allow anyone else to regularly use the Vehicle without our written consent; or
   h. assign or sublease the Vehicle or Lease.

21. **Title and Registration.** Legal title to the Vehicle will be in our name, and the Vehicle will be registered as we direct. You must promptly pay all title, registration, and license fees.

22. **Required Insurance.** We have the right to change the amounts of Required Insurance shown in Section 15. The limits we require may not be sufficient for your needs. See your insurance provider for more information. You may obtain the required coverages through any insurance company, agent, or broker you choose. The insurance policy must be acceptable to us, name the Toyota Lease Trust as additional insured and loss payee, and give us at least 10 days written notice before any cancellation or reduction in coverage. You authorize us to endorse your name(s) on any check or draft from your insurance company for any claim. You must provide us with written proof of this insurance.

23. **Charges for Late Payments.** For Monthly-Pay Leases, if we do not receive a full Monthly Payment within ___10___ days after it is due, you must pay a late payment charge of ___5.00___% of the unpaid amount or $___10.00___, whichever is ___greater___.

24. **Payment Obligations.** You may not change or stop your Monthly Payments for any reason, even if the Vehicle is stolen, destroyed, seized by the government, inoperative, experiences any mechanical problem, or does not perform satisfactorily. If you do not return the Vehicle by the Scheduled Maturity Date, you must continue to pay the Monthly Payment. However, continued payment does not mean you have our permission to keep the Vehicle. If you have a One-Pay Lease, the Monthly Payment is determined by dividing the Total Lease Payment (Section 9) by the number of months in the Lease Term (Section 14). Payments will be applied in the following order: past due payments, current payment due, late charges, other amounts due under this Lease.

25. **Change in Address.** You must notify us in writing within 30 days of any change in your address.

26. **Official Fees, Taxes and Fines.** You must promptly pay all official fees and taxes related to this Vehicle and this Lease, including title, license, and registration fees, and sales, use, excise, and personal property taxes. You must also promptly pay any fines incurred on the Vehicle such as traffic or parking tickets. Some bills for official fees and taxes may be sent to you for payment. Other bills may be paid by us on your behalf and we will charge you for such amounts. You must pay all fees incurred during the Lease Term, even if they are assessed and billed after the Lease has ended. We may charge you an estimated amount for the remaining fees and taxes at the time this Lease ends. You are responsible for any shortage in this estimate, and we will refund you any excess. We are not obligated to apply for any refund or abatement of official fees and taxes, including personal property taxes. If you make a written request that we apply for a refund of an official fee or tax that you paid to us, to which you are entitled, we will file an application for refund. We will send any refund we receive, less any amounts due under this Lease, to you. We may pay any title, registration, license fee, tax or fine which you fail to pay, and charge you the amount paid. You are responsible for any fines or penalties if you fail to pay the bill when due.

27. **Default and Loss of the Vehicle.** You will be in default if any of the following occur:
   • you fail to make any payment when it is due; or
   • you fail to keep any other agreement in this Lease; or
   • you provided false or misleading information when applying for this Lease; or
   • you become the subject of a bankruptcy or insolvency proceeding; or
   • the Vehicle is lost, stolen, seized, or damaged beyond reasonable repair.

If you are in default, we may do any or all of the following after giving any legally required notices, and after expiration of any legally required cure or reinstatement periods:
   a. terminate this Lease and your right to use the Vehicle;
   b. take possession of the Vehicle from your property or elsewhere, in any manner not prohibited by law;
   c. require you to pay the amounts set forth in Section 31;
   d. pursue any other remedy allowed by law; and
   e. except as provided below, require you to pay all of our expenses for taking these actions, including, but not limited to, expenses for repossession, transportation, storage, collection, and legal costs, including reasonable attorneys' fees paid to an attorney who is not our salaried employee, as allowed by applicable law.

If you are in default, you agree that we have all the rights and remedies provided in this Lease to the extent that such rights and remedies are consistent with state law. You agree that we have all the rights and remedies provided to lessors under state law. If we elect to end this Lease following your default, you agree to pay us the amounts provided for in this section as well as Section 31.

If this Lease is signed in Colorado, Kansas, North Carolina, Oklahoma, or South Carolina, the attorneys' fees will be limited to fifteen percent of the amount you owe under Section 31, unless a court awards a higher amount. If this Lease is signed in Ohio, no legal costs or attorneys' fees will be charged to you, unless a court awards them to us. If this Lease is signed in West Virginia, no legal costs or attorneys' fees will be charged to you, unless you are leasing the vehicle primarily for business use, excluding agricultural use.

Lexus Financial Services is a trade name for Toyota Motor Credit Corporation and service mark used by Toyota Lease Trust.          Page 5 of 9          |⋯⋯⋯ 1 ⋯⋯⋯ |          6305 (10/19/12)

Customer Completed Copy - ████

True and Accurate Completed Copy - UCC Non-Authoritative Copy

True and Accurate Completed Copy - UCC Non-Authoritative Copy

Customer Completed Copy – ▬▬▬

# MOTOR VEHICLE CLOSED-END LEASE AGREEMENT



### ENDING YOUR LEASE

28. **Early Termination by Us.** We may terminate this Lease at any time if you are in default (see Section 27), and you must pay us the amounts set forth in Section 27(e) and Section 31.

29. **Early Termination by You.** If you are not in default, you may terminate your lease at any time prior to the end of the Lease, provided you do so in accordance with the terms contained in Sections 30 or 31 of this Lease.

   If you terminate a <u>Monthly-Pay Lease</u> early and do not specify the Remaining Payments Liability at the time you turn in the Vehicle, the Standard Early Termination Liability will automatically be applied. The Standard Early Termination Liability always applies to <u>One-Pay Leases</u> and leases in default.

30. **Remaining Payments Liability (Option 1—Monthly-Pay Leases Only).** If you are not in default, you have the option to terminate your Lease at any time if you return the Vehicle to us at the location we specify and pay us, upon demand, the following amounts:

   a. any Monthly Payments that have become due and are unpaid at termination; *plus*,

   b. any remaining Monthly Payments from date of termination to the end of this Lease; *plus*,

   c. any other amounts you owe under this Lease; *plus*,

   d. any charges for Excessive Wear and Use and excess mileage (Sections 10 and 34); *plus*,

   e. any official fees or taxes charged in connection with the Lease termination; *minus*,

   f. any remaining Refundable Security Deposit (Section 35) and any amounts we receive from cancelled Optional Insurance or Other Products (Section 37).

31. **Standard Early Termination Liability (Option 2—All Leases and Leases in Default).** If you are not in default, you have the option to terminate your Lease at any time if you return the Vehicle to us at a location we specify and pay us, upon demand, the following amounts:

   a. any Monthly Payments that have become due and are unpaid at termination (<u>Monthly-Pay Leases</u> only); *plus*,

   b. an Early Termination Charge equal to the difference, if any, between the "Adjusted Lease Balance" and the "Fair Market Value" (as defined below); *plus*,

   c. any other amounts due under this Lease, except charges for Excessive Wear and Use and excess mileage (Sections 10 and 34); *plus*,

   d. any out of pocket costs paid by us for the sale of the Vehicle, including costs for transporting, storing, preparing for sale, and auctioning the Vehicle, *plus*,

   e. any official fees or taxes charged in connection with the Lease termination; *minus*,

   f. any remaining Refundable Security Deposit (Section 35), or refund we receive from Optional Insurance or Other Products (Section 37).

   The "Adjusted Lease Balance" is calculated for a <u>Monthly-Pay Lease</u> by adding the remaining Base Periodic Payments (Section 9.i) not yet due and the Residual Value (Section 9.d), then subtracting the unearned portion of the Rent Charge, calculated using the "constant yield" method (a method of earning rent charges in which the rent charge earned each month is proportional to the remaining lease balance). For a <u>One-Pay Lease</u>, the Adjusted Lease Balance is equal to the Residual Value less the unearned portion of the Rent Charge. To determine the unearned portion of the Rent Charge, first determine the Monthly Rent Charge by dividing the Total Rent Charge (Section 9.i) by the number of months in the Lease Term (Section 14). The unearned Rent Charge is the Monthly Rent Charge multiplied by the number of months from the date of termination to the end of the Lease Term. To determine the number of remaining Monthly Payments from the date of termination to the end of this Lease, assume that a Monthly Payment (equal to Total of Base Periodic Payments (Section 9.g) divided by the Lease Terms (Section 14)) would be due on the Lease Date and on the same date of each subsequent month.

   The "Fair Market Value" is equal to the price we receive when we dispose of the Vehicle at wholesale. The Fair Market Value may also be determined by an appraisal of the wholesale value of the Vehicle, which you may obtain at your own expense from a professional independent appraiser agreed to by us. If you obtain this appraisal, the appraised value will be used as the Fair Market Value. The appraisal must be obtained within 10 days after you return the Vehicle to us.

   If the Vehicle is subject to a total loss or theft resulting in a total loss, the Fair Market Value will equal the amount of any insurance proceeds we receive from your Required Insurance. If there are no insurance proceeds the Fair Market Value will be zero. If this Lease is terminated as a result of a total loss or a theft resulting in a total loss of the Vehicle and you have maintained the Required Insurance set forth in Section 15, we will waive the Early Termination Charge set forth in Section 31b, after we receive the insurance proceeds and you have paid any deductible amounts.

32. **Your Option to Purchase the Vehicle.** You may purchase the Vehicle at any time during the Lease or at the Scheduled Maturity Date (unless a governmental agency has seized the Vehicle and instructed us not to release the Vehicle to you). The price to purchase the Vehicle at the Scheduled Maturity Date is the Purchase Option Price shown in Section 11, plus 32a, 32b and 32c, below. The price to purchase the Vehicle during the Lease is:

   a. any Monthly Payments that have become due, or other amounts due under this Lease, except charges for Excessive Wear and Use and excess mileage (Sections 10 and 34); *plus*,

   b. any official fees and taxes, or documentary fees charged in connection with the purchase; *plus*,

   c. any amounts necessary to meet any legal selling requirements; *plus*,

   d. the Adjusted Lease Balance as defined in Section 31.

   As part of a like-kind exchange program, TMCC has engaged TQI Exchange, LLC ("TQI") as a qualified intermediary. Lessor and Lessee are hereby notified that TMCC has assigned to TQI its rights (but not its obligations) in any agreement for the sale of the Vehicle at lease termination.

Lexus Financial Services is a trade name for Toyota Motor Credit Corporation and service mark used by Toyota Lease Trust.

Page 6 of 9

6505 (10-17-12)

Customer Completed Copy – ▬▬▬

True and Accurate Completed Copy - UCC Non-Authoritative Copy

True and Accurate Completed Copy - UCC Non-Authoritative Copy

Customer Completed Copy - █████

## MOTOR VEHICLE CLOSED-END LEASE AGREEMENT



33. **Obligations if You Do Not Purchase the Vehicle at the Scheduled Maturity Date.** At the Scheduled Maturity Date, you must return the Vehicle to us at the location we specify and pay us, upon demand, the following amounts:
    a. any Monthly Payments or other amounts due under this Lease; *plus,*
    b. any official fees or taxes charged in connection with the Lease termination; *plus,*
    c. any Excessive Wear and Use charges disclosed in Section 34; *plus,*
    d. any excess mileage charge disclosed in Section 10. You will not receive a refund if you do not use all of the mileage set forth in Section 10.

34. **Excessive Wear and Use Charges.** If you do not purchase the Vehicle at any time during the Lease or at the Scheduled Maturity Date, or if you elect to terminate your Lease pursuant to the terms of the Lease, you are responsible for the estimated cost to repair damage (including diagnostic cost if any) to the Vehicle which is excessive wear and use (even if we do not repair the Vehicle).
    Excessive wear and use may include but is not limited to certain damage such as:
    a. inoperative mechanical and electrical parts;
    b. damage (including but not limited to, damage to the engine) due to your failure to maintain the Vehicle pursuant to the terms of the Lease;
    c. damage to the body, lights, trim or paint;
    d. damaged, broken or missing glass;
    e. torn, damaged or stained interior;
    f. damage from flood, water, hail or sand;
    g. damage from removal of equipment or signs placed on the Vehicle;
    h. missing equipment, parts and accessories, including missing keys or remote entry devices; or
    i. any wear or damage to any part of the tire that doesn't allow the tire to meet the manufacturer's guidelines for safe operation, or any mismatched tire sizes in a set of 5 (or 4 with an emergency spare if the vehicle was equipped with one).

### ADDITIONAL INFORMATION

35. **Refundable Security Deposit.** Your security deposit may be used by us to pay amounts that you owe under this Lease. If you elect to purchase your Vehicle, your security deposit may be applied by us to the amount you owe to purchase your Vehicle. Any unused security deposit will be returned to you at the end of the Lease Term. No interest, increase, or profits will be paid to us on the security deposit.

36. **Assignment.** We can assign our interest in this Lease and in the Vehicle without your consent. After you sign this Lease, we will assign it to TLT and you agree to make all payments to TLT.

37. **Refund of Optional Insurance or Other Products.** If any optional insurance or product included in the Gross Capitalized Cost is cancelled before the end of the Lease Term, or if you are not accepted by the Provider for a requested optional insurance or product, we will credit any refunds to your account.

38. **Indemnity.** You agree to indemnify us from, and to pay on our behalf, any claim or loss (including damages, costs, expenses and legal fees) which arises from or is related to the use, maintenance or operation of the Vehicle. Any insurance we provide is secondary to the Required Insurance.

39. **Credit Information.** You authorize us, at any time, to investigate any information provided on your credit application in order to establish, maintain and collect on this Lease account. You authorize us to provide information concerning your account to credit reporting agencies and others who may lawfully receive such information.

40. **Liability.** Lessee and Co-Lessee are jointly and severally liable. If there is both a Lessee and Co-Lessee signing this Lease, we can release, waive, or delay the enforcement of our rights against one of you, without affecting our rights as to the other one.

41. **Notices.** All Lessee and Co-Lessee correspondence and notices will be sent to the Lessee's Billing Address shown on the Lease, unless you give us a different address in writing. All correspondence and notices will be given solely in LFS's name, and will be given on behalf of TLT.

42. **Choice of Law and Severability.** You agree that the law of the state in which this Lease is signed applies to this Lease. If certain provisions of this Lease violate the law, those provisions will be void, and the rest of the Lease will be enforceable.

43. **No Waiver by Us.** If we delay or refrain from exercising our rights under this Lease, we do not lose those rights. If we accept late or partial payments from you, we do not waive our right to receive full and timely payments.

44. **Odometer Disclosure Statement.** Federal law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an Odometer Disclosure Statement, failure to return it to us, or making a false statement therein, may result in fines and/or imprisonment. You will be provided an Odometer Disclosure Statement to complete prior to the termination of this Lease.

45. **Electronic Records and Signatures and Conversion to Paper.** You agree to use electronic records and electronic signatures to document this contract. Your electronic signatures will have the same effect as signatures on a paper contract.
    There will be one authoritative copy of this contract. It will be the electronic copy in a document management system we designate for storing it. We may convert the authoritative copy to a paper original. We will do so by printing one paper copy marked "Original." This paper original will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper.

Lexus Financial Services is a trade name for Toyota Motor Credit Corporation and service mark used by Toyota Lease Trust.

6305 (10/9/12)

Customer Completed Copy - █████

True and Accurate Completed Copy - UCC Non-Authoritative Copy

Customer Completed Copy -

# MOTOR VEHICLE CLOSED-END LEASE AGREEMENT



## ARBITRATION

46. **Arbitration Provision.** You agree that any claims arising from or relating to this Lease or related agreements or relationships, including the validity, enforceability, arbitrability or scope of this Provision, at your or our election, are subject to arbitration. This includes, without limitation, claims in contract, tort, pursuant to statute, regulation, ordinance or in equity or otherwise, and claims asserted by you against us, and the following Covered Parties: TLT, Toyota Motor Credit Corporation, and/or any of our or its affiliates and/or any of our or their employees, officers, successors, assigns or against any third party providing any product or service in connection with the Lease that you name as a co-defendant in any action against any of the foregoing. However, only a court (and not an arbitrator) shall determine the validity and effect of this Provision's ban on class actions, class-wide arbitrations and similar proceedings (which appears in bold type below) (the "Class Action Waiver"). Any arbitration shall be administered by JAMS (its rules can be obtained by contacting it at 1920 Main Street, Suite 300, Irvine, CA 92614), provided that no arbitration may be administered without the consent of all parties to the arbitration by any organization that has in place any formal or informal policy that is inconsistent with and purports to override the terms of this Provision. In all cases, the arbitrator must be a lawyer with at least 10 years of experience or a retired judge. Such claims shall be resolved in accordance with (i) the Federal Arbitration Act (the "FAA"). (ii) the Administrator's rules and procedures in effect at the time the claim is filed; and  (iii) this Provision. Any arbitration hearing at which you appear shall be conducted at a location that is reasonably convenient to where you live. The Arbitrator shall apply applicable substantive law consistent with the FAA (and not by any state law concerning arbitration) and shall award such remedies, if any, that would be available in court if arbitration had not been elected. The Arbitrator shall follow applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of either party, shall provide a brief written explanation of the basis for the award. If you cannot afford to pay and cannot obtain a waiver of the fees charged by the Administrator or Arbitrator, or if you believe that such fees are or will be prohibitively expensive or excessive. we and the Covered Parties will entertain in good faith any reasonable written request by you for us and the Covered Parties to pay or reimburse you for all or part of such fees. In any event, if applicable law requires us and the Covered Parties to pay or reimburse you for any such fees, such law will control.

Each party shall bear the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law and/or the Lease gives a party the right to recover any of those fees from the other party. We, the Covered Parties and you are prohibited from participating in a class action or private attorney general  action in court or class-wide arbitration with respect to any claims we, the Covered Parties or you have asserted against one another or other beneficiaries of this Provision. There should also be no joinder or consolidation of parties, except for multiple parties to this Lease. In the event of a conflict or inconsistency between this Provision, on the one hand, and the applicable arbitration rules of the Administrator or the other provisions of the Lease on the other hand, this Provision shall govern. If any portion of this Provision is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the other provisions of this Provision or this Lease· provided however, that if the Class Action Waiver is  deemed invalid, then this entire Provision shall be null and void, subject to the right of any party to appeal the determination of  invalidity with respect to the Class Action Waiver. You and we retain rights to self-help remedies, such as repossession of the  Vehicle. (However, the other party against whom the self-help remedy is sought may initiate an action in court only to enjoin the party from using a self-help remedy. No monetary relief may be sought in such a court action.) You also will not be subject to this Provision for any individual claim brought by you in small claims court or your state's equivalent court, unless such claim is transferred, removed or appealed to a different court. With respect to any claims covered by this Provision, a party who has asserted a claim in a lawsuit or in any action for replevin in court may elect arbitration, or may be required to arbitrate, with respect to any claim(s) subsequently asserted in that lawsuit by that party or any other party(ies). IF ANY PARTY ELECTS ARBITRATION  WITH RESPECT TO A CLAIM, NEITHER YOU NOR. WE NOR ANY COVERED PARTY WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT; TO HAVE A JURY TRIAL ON THAT CLAIM; TO ENGAGE IN PREARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE RULES OF THE ADMINISTRATOR; OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO SUCH CLAIM. THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING EXCEPT FOR A LIMITED RIGHT TO APPEAL AS PROVIDED IN THE FAA. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY NOT BE AVAILABLE IN ARBITRATION. This Provision is made pursuant to a transaction in interstate commerce, and shall be governed by the FAA. Judgment upon the award may be entered in any court having jurisdiction. This Provision will survive your full payment of the Lease, our sale or transfer of the Lease, any repossession of the Vehicle, and your (or our) bankruptcy.

By signing below, you agree that at the request of either you or us any controversy or claim between you and us shall be determined by neutral binding arbitration in accordance with the terms of this Arbitration Provision.

Lessee _____    Co-Lessee _____    N/A    _____

Lexus Financial Services is a trade name for Toyota Motor Credit Corporation and service mark used by Toyota Lease Trust.

6305 (10/18/12)

Customer Completed Copy -

Customer Completed Copy - ▆▆▆▆▆▆

# MOTOR VEHICLE CLOSED-END LEASE AGREEMENT



## LEASE SIGNATURES AND NOTICES

NOTICE TO LESSEE AND CO-LESSEE: (1) THIS IS A LEASE AGREEMENT, NOT A PURCHASE AGREEMENT. YOU HAVE NO OWNERSHIP INTEREST IN THE VEHICLE UNLESS YOU EXERCISE YOUR OPTION TO PURCHASE THE VEHICLE AS SET FORTH IN THIS LEASE. (2) EARLY TERMINATION OF THIS LEASE MAY REQUIRE YOU TO PAY A SUBSTANTIAL AMOUNT. (3) DO NOT SIGN THIS LEASE BEFORE YOU READ IT OR IF THERE ARE BLANK SPACES OR MISSING PAGES. (4) YOU ARE ENTITLED TO A COMPLETE AND FULLY EXECUTED COPY OF THIS LEASE.

**PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT ADVICE IF YOU HAVE QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE LEASE YOU SIGN.**

By signing below, you acknowledge and agree that: (1) this is a lease, and you have no ownership interest in the Vehicle unless or until you exercise your option to purchase the Vehicle as set forth herein; (2) you have read the entire Lease consisting of nine pages; (3) you agree to all the provisions of the Lease; (4) this Lease contains the entire agreement for the lease of the Vehicle, and any change to the Lease must be in writing and signed by you and us; and (5) you have received a completely filled-in copy of this Lease for your records.

Lessee _____   Co-Lessee _____   N/A

Name: TAMARA SINGLETARY                      Name: N/A

**Notice Regarding Assignment.** As part of a like-kind exchange program, Toyota Motor Credit Corporation ("TMCC") has engaged TQI Exchange, LLC ("TQI") as a qualified intermediary.  Lessor is hereby notified that TMCC has assigned to TQI its rights (but not its obligations) in agreements to acquire the Vehicle.

The Lessor accepts this Lease and assigns to the Toyota Lease Trust all its rights, title and interest in the Lease and in the Vehicle, and Lessor's rights under any guaranty executed in connection with this Lease, with full powers to the Toyota Lease Trust to collect and discharge all obligations related to this Lease, any guaranty, and this assignment.

Lessor _____

Name: DANIEL MARTIN, INC.

Lexus Financial Services is a trade name for Toyota Motor Credit Corporation and service mark used by Toyota Lease Trust.

Page 9 of 9

6305 (10/1/12)

Customer Completed Copy - ▆▆▆▆▆▆

True and Accurate Completed Copy - UCC Non-Authoritative Copy

True and Accurate Completed Copy - UCC Non-Authoritative Copy

"EXHIBIT B"

# COMMONWEALTH OF PENNSYLVANIA
## CERTIFICATE OF TITLE FOR A VEHICLE

1,656

141273400025644-001

| 2T2BK1BA4FC253315 | 2015 | LEXUS | 73275287001 TO |
|---|---|---|---|
| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE OF VEHICLE | TITLE NUMBER |

| SW | 0 | | 5/07/14 | 000030 | 0 |
|---|---|---|---|---|---|
| BODY TYPE | DUP | SEAT CAP | PRIOR TITLE STATE | ODOM PROCD DATE | ODOM MILES | ODOM STATUS |

| 5/07/14 | 5/07/14 | | | | |
|---|---|---|---|---|---|
| DATE PA TITLED | DATE OF ISSUE | UNLADEN WEIGHT | GVWR | GCWR | TITLE BRANDS |

LESSEE   TAMARA SINGLETARY

REGISTERED OWNER(S)

TOYOTA LEASE TRUST
260 INTERSTATE N CIR NW
12TH FLOOR
ATLANTA GA 30339

FIRST LIEN FAVOR OF

SECOND LIEN FAVOR OF

FIRST LIEN RELEASED _____ DATE

BY _____
AUTHORIZED REPRESENTATIVE

MAILING ADDRESS

If a second lienholder is listed upon satisfaction of the first lien the first lienholder must forward this Title to the Bureau of Motor Vehicles with the appropriate form and fee.

SECOND LIEN RELEASED _____ DATE

BY _____
AUTHORIZED REPRESENTATIVE

TOYOTA LEASE TRUST
260 INTERSTATE N CIR NW
12TH FLOOR
ATLANTA GA 30339

I certify as at the time of issue the official records of the Pennsylvania Department of Transportation reflect that the person(s) or company named herein is the lawful owner of the said vehicle.

BARRY J. SCHOCH, P. E.
Secretary of Transportation

## pennsylvania
DEPARTMENT OF TRANSPORTATION

### D. APPLICATION FOR TITLE AND LIEN INFORMATION

SUBSCRIBED AND SWORN
TO BEFORE ME

TO BE COMPLETED BY PURCHASER WHEN VEHICLE IS SOLD AND THE APPROPRIATE SECTIONS ON THE REVERSE SIDE OF THIS DOCUMENT ARE COMPLETED.

If a co-purchaser other than your spouse is listed and you want the title to be listed as "Joint Tenants With Right of Survivorship" (On death of one owner, title goes to surviving owner) CHECK HERE [ ] Otherwise the title will be issued as "Tenants in Common" (On death of one owner, interest of deceased owner goes to his/her heirs or estate)

IF NO LIEN, CHECK [ ]   IS THIS AN ELT (IF YES FIN REQUIRED)   YES [ ] NO [ ]

1ST LIENHOLDER FINANCIAL INSTITUTION NUMBER

1ST LIENHOLDER NAME

STREET

CITY                    STATE          ZIP

IF NO 2ND LIEN CHECK [ ], IS THIS AN ELT (IF YES FIN REQUIRED) YES [ ] NO [ ]

2ND LIENHOLDER FINANCIAL INSTITUTION NUMBER

2ND LIENHOLDER NAME

STREET

CITY                    STATE          ZIP

STORE IN A SAFE PLACE · IF LOST APPLY FOR A DUPLICATE · ANY ALTERATION OR ERASURE VOIDS THIS TITLE

57044414

"EXHIBIT C"

United Auto Collision, Inc.
3913 Germantown Avenue
Philadelphia, PA 19140
215-227-4150
UnitedAutoCollision1@Gmail.com

April 19, 2019

Tamara Singletary
 19120

RE: VIN #2T2BK1BA4FC253315

Dear Sir or Madam,

This letter serves as final notice prior to filing for the Pennsylvania Title for the above referenced vehicle in the Philadelphia Court of Common Pleas, which has been in our possession since July 12, 2016. We are due a total of $36,645 for 1012 days of storage ($35 per day as of today) plus an additional $1225 for repairs.

We are hereby giving ten (10) day notice to provide the vehicle title, or pay in full the entire balance due

Sincerely,


Lisa A. Tennyson
General Manager
United Auto Collision

LAT/me

CC: Louis Schwartz, Legal Counsel for United Auto Collision
     Toyota Lease Trust, Lienholder

"EXHIBIT D"

# THOMSON, RHODES & COWIE, P.C.

Attorneys At Law

1055 VIRGINIA DRIVE, SUITE 203
FORT WASHINGTON, PA 19034

Email: sbk@trc-law.com

Steven B.Kantrowitz

(215) 496-9400

May 2, 2019

**VIA REGULAR MAIL & EMAIL**
Louis S. Schwartz, Esquire
1500 John F. Kennedy Blvd.
Suite 1825
Philadelphia, PA 19102

Re:  **Toyota Lease Trust v. United Auto Collision, Inc.**
**2015 Lexus - VIN: 2T2BK1BA4FC253315**
**Our File No. 8010-80025**

Dear Mr. Schwartz:

I understand that you are representing United Auto Collision, Inc., relative to the above-described vehicle.

Toyota Lease Trust and its affiliates are the owners of the above-referenced vehicle that may have been abandoned by its leasee. That ownership interest is reflected on the Certificate of Title and, presumably, on any registration given to your client by the vehicle's leasee, Tamara Singletary. Notwithstanding this, however, in spite of the fact that your client claims to have been in possession of the vehicle since July 12, 2016, your client did not provide timely notification of that fact to Toyota Lease Trust. Instead, now your client is demanding payment of $36,645.00 in storage fees plus an additional $1,225.00 for repairs. No notification occurred until an April 19, 2019, letter received on April 24, 2014.

Please be advised that my client is under no obligation to make that payment and will not do so. In an effort to resolve this matter without extensive litigation, however, my client has authorized me to advise that it would pay reasonable storage charges over the period of time that it would take for it to obtain possession of the vehicle from the time of your client's notification. If you would like to make those arrangements, kindly contact me as soon as possible so that the payment may be made and possession obtained. If you do not, I will contact my client to authorize suit to obtain possession for Toyota Lease Trust and its affiliates and suit will be based upon the fact that United Auto Collision, Inc., is wrongfully in possession of the vehicle without any lawful right to possession. Any claims for storage during the period that you refuse to turn over possession are improper and will not be honored. In addition, your client, United Auto Collision, Inc., has apparently been in possession of the vehicle for years. In spite of this, however, it has at no time

Louis S. Schwartz, Esquire.
May 2, 2012
Page 2

until April of 2019, notified my client of same.  This wrongful action by your client has caused my client to be damaged by not having possession and use of the vehicle during that time and, also, by the diminution in value of the vehicle since it is a rapidly depreciating asset.  My client may bring suit for such damages.

Again, if you would like to resolve this matter, kindly contact me immediately.

Very truly yours,

STEVEN B. KANTROWITZ

SBK:pm
Enclosure

## AFFIDAVIT OF VALUE

_Manuel Livaly_, being first duly sworn, deposes and says that he/she is an employee of plaintiff in the above-captioned action and is authorized to and does make this Affidavit on its behalf; and that the fair market value of the 2015 Lexus, VIN: 2T2BK1BA4FC253315 ,

is $ _24,400.00_ .   The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

DIANE BROWN
Commission Number 744898
My Commission Expires

EXHIBIT "E"

# CLOSED END MOTOR VEHICLE LEASE AGREEMENT

TOYOTA FINANCIAL SERVICES

Lease Date 05/11/2013

**1. Parties**

| LESSOR (DEALER) NAME AND ADDRESS | LESSEE AND CO-LESSEE NAME AND LESSEE'S BILLING ADDRESS | VEHICLE GARAGING ADDRESS, IF DIFFERENT THAN LESSEE'S BILLING ADDRESS |
|---|---|---|
| CONICELLI TOYOTA<br>550 RIDGE PIKE AND CHEMICAL RD<br>CONSHOHOCKEN PA 19428<br>PHONE NUMBER (610)825-7128 | NAJEEYAH R ROBINSON<br>JOAN MATILDA COLEY<br>[redacted]<br>COUNTY | N/A<br>MAY 21 2013<br>COUNTY N/A |

This is a Lease for the Vehicle described below. The words "you", "your" and "yours" refer to the Lessee and any Co-Lessee. The words "we", "us" and "our" refer to the Lessor, and after assignment, the Toyota Lease Trust ("TLT") and any subsequent assignee. Toyota Motor Credit Corporation ("TMCC") will be servicing this Lease on behalf of TLT. By signing this Lease, you are leasing the Vehicle according to all of the terms of this Lease.

**2. Description of Leased Vehicle**

You are leasing from us, and received in satisfactory condition, the following Vehicle

| New, Used or Demo | Year | Make | Model | Body Style | Vehicle Identification No | Odometer Mileage |
|---|---|---|---|---|---|---|
| NEW | 2013 | TOYOTA | COROLLA | 4DR SDN | 2T1BU4EE5DC049845 | 25 |

Primary Use: X Personal, Family or Household ☐ Business or Commercial ☐ Agricultural

## II. TILA CONSUMER LEASING ACT SEGREGATED DISCLOSURES

| 3 Amount Due at Lease Signing or Delivery | 4 Monthly Payments | 5 Other Charges (not part of your Monthly Payment) | 6 Total of Payments |
|---|---|---|---|
| (Itemized in Section 7 below)<br>$ 1500.01 | Your first Monthly Payment of $ 388.02 is due on 05/11/2013, followed by 35 payments of $ 388.02 due on the 11th of each month. The total of your Monthly Payments is $ 13968.72 | Disposition fee (if you do not purchase the Vehicle) $ 350.00<br>Total $ 350.00 | (The amount you will have paid by the end of the Lease)<br>$ 15430.71 |

**Itemization of Amount Due at Lease Signing or Delivery**

7 Amount Due at Lease Signing or Delivery

| | |
|---|---|
| a Capitalized Cost Reduction | $ 852.79 |
| b First Monthly Payment | $ 388.02 |
| c Refundable Security Deposit | $ N/A |
| d Title Fees | $ 22.50 |
| e Registration Fees | $ 46.00 |
| f License Fees | $ N/A |
| g Tax on Capitalized Cost Reduction | $ 38.80 |
| h Acquisition Fee | $ N/A |
| i DOC FEE | $ 131.00 |
| j TIRE | $ 5.00 |
| k ONLINE REG | $ 15.90 |
| l N/A | $ N/A |
| m Total | $ 1500.01 |

8 How the Amount Due at Lease Signing or Delivery will be Paid

| | |
|---|---|
| a Net Trade-in Allowance | $ N/A |
| b Rebates and Noncash Credits | $ 500.00 |
| c Amount to be Paid in Cash | $ 1000.01 |
| d Total | $ 1500.01 |

**9. Your Monthly Payment is determined as shown below**

| | |
|---|---|
| a Gross Capitalized Cost. The agreed upon value of the Vehicle ($ 20963.08 ) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance). For an itemization of this amount, see Section 13 | $ 23183.00 |
| b Capitalized Cost Reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost | − $ 852.79 |
| c Adjusted Capitalized Cost. The amount used in calculating your Base Monthly Payment | = $ 22250.21 |
| d Residual Value. The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment | − $ 11436.00 |
| e Depreciation and any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term | = $ 10814.21 |
| f Rent Charge. The amount charged in addition to the Depreciation and any Amortized Amounts | + $ 1770.48 |
| g Total of Base Monthly Payments. The Depreciation and any Amortized Amounts plus the Rent Charge | = $ 12584.69 |
| h Lease Payments. The number of payments in your Lease | ÷ 36 |
| i Base Monthly Payment | = $ 349.57 |
| j Monthly Sales/Use Tax | + $ 38.45 |
| k N/A | + $ N/A |
| l Total Monthly Payment ("Monthly Payment") | = $ 388.02 |

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

10 **Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 36000 miles over the odometer mileage disclosed above, at the rate of 0.15 per mile

11 **Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease Term for $ 11436.00

12 **Other Important Terms.** See your Lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable

**Gross Capitalized Cost Itemization and Other Items**

13 **Itemization of Gross Capitalized Cost**

You will pay for the following items over the Lease Term as part of your Monthly Payment

| | |
|---|---|
| a Agreed Upon Value of the Vehicle | $ 20963.08 |
| b Taxes | + N/A |
| c Initial Title, License and Registration Fees | + N/A |
| d Mechanical Breakdown Protection and/or Maintenance Agreement | + N/A |
| e Credit Life and/or Disability Insurance | + N/A |
| f Guaranteed Automobile Protection | + 695.00 |
| g Outstanding Prior Credit or Lease Balance | + N/A |
| h Acquisition Fee | + 830.00 |
| i TFS EXCESS WEAR & USE | + 795.00 |
| j N/A | + N/A |
| k N/A | + N/A |
| l N/A | + N/A |
| m Gross Capitalized Cost | = 23183.00 |

14 **Lease Term and Scheduled Maturity Date**

The Lease Term of the Lease is 36 months, and the Scheduled Maturity Date of the Lease is 05/18/2016

15 **Required Insurance**

You must provide the following insurance during the Lease Term with the Lessee and/or Co-Lessee as an insured driver. No other types of insurance are required

a) primary automobile liability insurance with minimum limits for bodily injury or death of
i) $ 15000 for any one person, and
ii) $ 30000 for any one accident, and
iii) $ 5000 for property damage, and

b) physical damage insurance for the full value of the Vehicle, with a maximum deductible of $1,000

See Section 24 for additional information

You have provided us today with the following insurance information

GEICO 4289367379

Insurance Provider / Policy No / Insurance Coverage Verification By Dealer Employee

1(800)841-3000

Agent's Name / Address / Agent's Phone No

16 **Estimated Official Fees and Taxes** $ 1584.40

This is an estimate of the total amount you will pay over the Lease Term for official and license fees, registration, title, and taxes (including personal property taxes), whether included in your Total Monthly Payment (Section 9 l), the Amount Due at Lease Signing or Delivery (Section 7) or billed separately. The actual total of Official Fees and Taxes may be higher or lower than this estimate depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed. This estimate is based on your current address and may increase if you move or if tax rates change. You are responsible for paying any increases. See Section 28 for additional information

17 **Vehicle Maintenance and Damage**

You are responsible for all maintenance, repair, service, and operating expenses of the Vehicle. You agree to follow the owner's manual and maintenance schedule, and to provide us with written proof of such maintenance. You are responsible for all damage to the Vehicle and for its loss, seizure or theft. You must tell us immediately if any of these events happen, and cooperate with your insurance company

18 **Warranty**

If the Vehicle is a new or a demo Vehicle, the Vehicle is subject to the standard new warranty from the manufacturer. If the Vehicle is used, it is not covered by a warranty unless identified below

☐ Remainder of standard new vehicle warranty from manufacturer
☐ Used vehicle warranty from manufacturer

YOU ARE LEASING THIS VEHICLE "AS IS." THERE ARE NO WARRANTIES AS TO THE VEHICLE'S CONDITION, MERCHANTABILITY, SUITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE.

If the Lease is signed in Kansas, Maine, Massachusetts, Mississippi or West Virginia, we do not exclude any implied warranty of merchantability or fitness for a particular purpose

19 **Optional Insurance and Other Products**

You are not required to buy any of the Optional Insurance or Other Products listed below to enter into this Lease, and they are not a factor in our credit decision. These insurance and other products will not be provided unless the appropriate box is checked, all information is filled in, you initial below, and you are accepted by the Provider. By your initials below, you agree that you have received a notice of the terms of the insurance or product, and you want to obtain the insurance or product for the premium or charge shown. A portion of the premium or charge shown may be retained by the Lessor (Dealer)

☐ Optional Credit Life Insurance $ N/A (Beginning Coverage)
N/A (Insured(s))
N/A (Provider) $ N/A (Premium) N/A , N/A (Lessee / Co-Lessee Initials)

☐ Optional Credit Disability Insurance $ N/A (Beginning Monthly Coverage)
N/A (Provider) $ N/A (Premium) N/A , N/A (Lessee / Co-Lessee Initials)

☐ Optional Mechanical Breakdown Protection N/A miles N/A months (Coverage)
N/A (Provider) $ N/A (Premium or Charge) N/A , N/A (Lessee / Co-Lessee Initials)

X Optional Guaranteed Automobile Protection (see Section 33)
SAFE GUARD (Provider) $ 695.00 (Premium or Charge) NR , JC (Lessee / Co-Lessee Initials)

☐ Optional Maintenance Agreement
N/A (Provider) $ N/A (Premium or Charge) N/A , N/A (Lessee / Co-Lessee Initials)

Total Premiums and Charges $ 695.00

20 **Complete Agreement or Modification**

By your initials, you acknowledge that this Lease contains the entire agreement for the Lease of this Vehicle. There are no other agreements. Any change to this Lease must be in writing and signed by you and by us

NR, JC (Lessee / Co-Lessee Initials)

21 **Agreement to Arbitrate**

By initialing below, you agree that at the request of either you or us any controversy or claim (defined in Section 47 of this Lease) between you and us shall be determined by neutral binding arbitration. See Section 47 for further terms and conditions

NR, JC (Lessee / Co-Lessee Initials)

**Lease Signatures and Notices**

PLEASE READ THE BACK SIDE FOR ADDITIONAL TERMS AND CONDITIONS

**NOTICE TO LESSEE AND CO-LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ BOTH SIDES OF IT OR IF IT CONTAINS ANY BLANK SPACES; (2) YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS LEASE WHEN YOU SIGN IT.**

By signing below, you acknowledge that: (1) You have read the entire Lease, including the back side, (2) You agree to all of the provisions of this Lease, (3) You have received a completely filled-in copy of this Lease, (4) This is a lease, you have no ownership interest in the Vehicle unless and until you exercise your option to purchase set forth in this Lease

Lessee Signature (signed)　　Co-Lessee Signature (signed)

Notice Regarding Assignment: As part of a like-kind exchange program, TMCC has engaged TOI Exchange, LLC ("TOI") as a qualified intermediary. Lessor is hereby notified that TMCC has assigned to TOI its rights (but not its obligations) in agreements to acquire the Vehicle

The Lessor hereby accepts this Lease and assigns to the Toyota Lease Trust all rights, title and interest in the Lease and in the Vehicle, and Lessor's rights under any guaranty executed in connection with this Lease, with full power to the Toyota Lease Trust to collect and discharge all obligations related to this Lease, any guaranty, and this assignment

Lessor CONICELLI TOYOTA　By (signed)　Title F&I MANAGER　Date 05/11/2013

PREVIOUS EDITIONS MAY NOT BE USED

TMCC COPY

## YOUR OBLIGATIONS DURING THIS LEASE

## ENDING YOUR LEASE

## ADDITIONAL INFORMATION

## ARBITRATION

EXHIBIT "F"

# COMMONWEALTH OF PENNSYLVANIA

## CERTIFICATE OF TITLE FOR A VEHICLE

C 817

191403400011892-001

| 2T1BU4EE5DC049845 | 2013 | TOYOTA | 72040244001 TO |
|---|---|---|---|
| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE OF VEHICLE | TITLE NUMBER |

| SDN | 0 | | 5/20/13 | 000025 | 0 |
|---|---|---|---|---|---|
| BODY TYPE | DUP | SEAT CAP | PRIOR TITLE STATE | ODOM PROCD DATE | ODOM MILES | ODOM STATUS |

| 5/20/13 | 5/20/13 | | | | |
|---|---|---|---|---|---|
| DATE PA TITLED | DATE OF ISSUE | UNLADEN WEIGHT | GVWR | GCWR | TITLE BRANDS |

LESSEE   JOAN MATILDA COLEY

REGISTERED OWNER(S)

TOYOTA LEASE TRUST
260 INTERSTATE NORTH
CIRCLE NORTHWEST
ATLANTA GA 30339

**ODOMETER STATUS**
0 - ACTUAL MILEAGE
1 - MILEAGE EXCEEDS THE MECHANICAL LIMITS
2 - NOT THE ACTUAL MILEAGE
7 - NOT THE ACTUAL MILEAGE-ODOMETER TAMPERING VERIFIED
9 - EXEMPT FROM ODOMETER DISCLOSURE

**TITLE BRANDS**
A - ANTIQUE VEHICLE
C - CLASSIC VEHICLE
D - TOYOTA DELIVER VEHICLE
F - OUT OF COUNTRY
O - ORIGINALLY MFGD FOR NON US DISTRIBUTION
H - AGRICULTURAL VEHICLE
L - LOOKING VEHICLE
P - WAS A POLICE VEHICLE
R - RECONSTRUCTED
S - STREET ROD
T - RECOVERED THEFT VEHICLE
V - VEHICLE CONTAINS REISSUED VIN
W - FLOOD VEHICLE
X - IS WAS A TAXI

FIRST LIEN FAVOR OF

SECOND LIEN FAVOR OF

FIRST LIEN RELEASED _____ DATE _____

BY _____
AUTHORIZED REPRESENTATIVE

MAILING ADDRESS

TOYOTA LEASE TRUST
260 INTERSTATE NORTH
CIRCLE NORTHWEST
ATLANTA GA 30339

If a second lienholder is listed upon satisfaction of the first lien, the first lienholder must forward this Title to the Bureau of Motor Vehicles with the appropriate form and fee

SECOND LIEN RELEASED _____ DATE _____

BY _____
AUTHORIZED REPRESENTATIVE

### pennsylvania
DEPARTMENT OF TRANSPORTATION

I hereby cerfy as of the date of issue, the official records of the Pennsylvania Department of Transportation reflect that the person(s) or company named hereon is the lawful owner of the said vehicle.

BARRY J. SCHOCH, P. E.
Secretary of Transportation

## D. APPLICATION FOR TITLE AND LIEN INFORMATION

TO BE COMPLETED BY PURCHASER WHEN VEHICLE IS SOLD AND THE APPROPRIATE SECTIONS ON THE REVERSE SIDE OF THIS DOCUMENT ARE COMPLETED

SUBSCRIBED AND SWORN
TO BEFORE ME:

| | MO | DAY | YEAR |
|---|---|---|---|

SIGNATURE OF PROSPECTIVE OWNER

If a co-purchaser other than your spouse is listed and you want the title to be listed as "Joint Tenants With Right of Survivorship" (On death of one owner, title goes to surviving owner) CHECK HERE ☐. Otherwise, the title will be issued as "Tenants in Common" (On death of one owner, interest of deceased owner goes to his/her heirs or estate)

IF NO LIEN, CHECK ☐   IS THIS AN ELT? (IF YES, PIN REQUIRED)   YES ☐ NO ☐

1ST LIENHOLDER FINANCIAL INSTITUTION NUMBER

1ST LIENHOLDER NAME

STREET

| CITY | STATE | ZIP |
|---|---|---|

The undersigned hereby states as above for satisfaction of lien to the vehicle described above, subject to the encumbrance and claims stated in the application form.

SIGNATURE OF SELLER AND/OR AUTHORIZED SELLER

SIGNATURE OF EXISTING LIENHOLDER OR AUTHORIZED OWNER

IF NO 2ND LIEN CHECK ☐   IS THIS AN ELT? (IF YES, PIN REQUIRED) YES ☐ NO ☐

2ND LIENHOLDER FINANCIAL INSTITUTION NUMBER

2ND LIENHOLDER NAME

STREET

| CITY | STATE | ZIP |
|---|---|---|

**STORE IN A SAFE PLACE - IF LOST APPLY FOR A DUPLICATE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE**

5395 9075

EXHIBIT "G"

United Auto Collision, Inc.
3913 Germantown Avenue
Philadelphia, PA 19140
215-227-4150
UnitedAutoCollision1@Gmail.com

April 29, 2019

Toyota Lease Trust
260 Interstate North
Atlanta, GA 30339

RE: VIN #2T1BU4EE5DC049845

Dear Sir or Madam,

This letter serves as final notice prior to filing for the Pennsylvania Title for the above referenced vehicle in the Philadelphia Court of Common Pleas, which has been in our possession since February 15, 2017. We are due a total of $26,075 for 745 days of storage ($35 per day as of today).

We are hereby giving ten (10) day notice to provide the vehicle title, or pay in full the entire balance due.

Sincerely,

*Abandoned by Lienholder. → NO Interest in Vehicle*

Lisa A. Tennyson
General Manager
United Auto Collision

LAT/me

CC: Louis Schwartz, Legal Counsel for United Auto Collision
    Joan Coley, Registered Owner

EXHIBIT "H"

PHILADELPHIA COURT OF COMMON PLEAS
PETITION/MOTION COVER SHEET

CONTROL NUMBER:
**095329**

*(RESPONDING PARTIES MUST INCLUDE THIS NUMBER ON ALL FILINGS)*

| FOR COURT USE ONLY | |
|---|---|
| ASSIGNED TO JUDGE: | ANSWER/RESPONSE DATE: |

*Do not send Judge courtesy copy of Petition/Motion/Answer/Response. Status may be obtained online at http://court.phila.gov*

_____ Term, __
**SEPTEMBER 2019**
No. _____

United Auto Collision
3913 Germantown Ave
Phila PA 19140

vs.

Ivan Coley, et Al

Name of Filing Party: **003342**

*(Check one)* ☒ Plaintiff    ☐ Defendant
*(Check one)* ☐ Movant    ☐ Respondent

Has another petition/motion been decided in this case? ☐ Yes ☒ No
Is another petition/motion pending? ☐ Yes ☒ No

*If the answer to either question is yes, you must identify the judge(s):* ☐ Yes ☐ No

INDICATE NATURE OF DOCUMENT FILED:

☐ Petition (Attach Rule to Show Cause)    ☐ Motion
☐ Answer to Petition    ☐ Response to Motion

TYPE OF PETITION/MOTION *(see list on reverse side)*
**MOTION FOR TITLE OF VEHICLE**

PETITION/MOTION CODE
*(see list on reverse side)*
*MTFTV*

ANSWER/RESPONSE FILED TO *(Please insert the title of the corresponding petition/motion to which you are responding)*

I. **CASE PROGRAM**
   Is this case in the *(answer all questions)*:
   A. **COMMERCE PROGRAM**
   Name of Judicial Team Leader: _____
   Applicable Petition/Motion Deadline: _____
   Has deadline been previously extended by the Court?
   ☐ Yes ☐ No
   B. **DAY FORWARD/MAJOR JURY PROGRAM** — Year ____
   Name of Judicial Team Leader: _____
   Applicable Petition/Motion Deadline: _____
   Has deadline been previously extended by the Court?
   ☐ Yes ☐ No
   C. **NON JURY PROGRAM**
   Date Listed: _____
   D. **ARBITRATION PROGRAM**
   Arbitration Date: _____
   E. **ARBITRATION APPEAL PROGRAM**
   Date Listed: _____

United Auto Collision Vs Coley Etal-PTFTV

II. **PARTIES** (required for proof of service)
   (Name, address and *telephone number* of all counsel of record and unrepresented parties. Attach a stamped addressed envelope for each attorney of record and unrepresented party.)

TOYOTA LEASE TRUST
360 Interstate North
ATLANTA, GA 30339

**RECEIVED**
OCT 16 2019
TFS LEGAL DEPT.

19090334200003

the moving party certifies that this motion, petition, answer or response along with all documents filed, will be served as required by rules of Court (see PA. R.C.P. 206.6, Note to 208.2(a), and 440). Furthermore, moving party verifies direct and understands that sanctions may be imposed for inaccurate or incomplete answers.

_____    9/9/19    Michael Gessner 45970
*(Attorney Signature/Unrepresented Party)*    *(Date)*    *(Print Name)*    *(Attorney I.D. No.)*

The Petition, Motion and Answer or Response, if any, will be forwarded to the Court after the Answer/Response Date. No extension of the Answer/Response Date will be granted even if the parties so stipulate.

20-1081 (Rev. 6/2014)

020392FJ851 - Closed
2T1BU4EE5DC049845

The First Judicial District's Website:  http://courts.phila.gov.

## IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
### FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### TRIAL DIVISION – CIVIL

*United Auto Collision*
*3913 Germantown Ave*
*Phila Pa 19140*  Plaintiff/Petitioner

v.

*man Coley, et al*

:
:
:
:
:
:
:
:
:

~~SEPTEMBER 2019~~ Term, 20_____

No._____ **003342**

**095329**

Control No._____

## RULE

AND NOW, this ___ day of _____, _____, upon consideration of the foregoing Motion/Petition *Vehicle Title* _____

_____

_____, a RULE is hereby entered upon the Respondent to show cause why the relief requested therein should not be granted.

RULE RETURNABLE on the _____ day of _____, _____, at _____ a.m./p.m., in Courtroom _____, City Hall, Philadelphia, PA  19107.

BY THE COURT:

_____

J.

IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

*United Auto Collision*
*3913 Germantown Ave*
*Phila Pa 19140*          Plaintiff

v.

*Joan Coley, et al*

SEPTEMBER 2019

003342  Term, 20____

No._____

095329

Control No._____

## ORDER

AND NOW, this __ day of _____, ____, upon consideration of the Motion after reasonable notice and an opportunity for a hearing having been provided to all interested parties, the court hereby awards ownership of one, *2013 Toyota Corolla*_____, bearing vehicle identification number *2T1BU4EE5DC049845* to *United Auto Collision* and the right, title and interest of any other person to said vehicle is hereby extinguished. The Department of Transportation may accept this order as evidence of ownership in lieu of a certificate of title. The Petitioner shall submit the appropriate forms, taxes and fees and comply with any other procedures of the Department of Transportation in order to receive the appropriate certificate of title for said vehicle.

BY THE COURT:

_____
J.

IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

*United Auto Collision*
*3913 Germantown Ave*
*Phila Pa 19140*                    Plaintiff

v.

*Joan Coley*

SEPTEMBER 2019

_____Term, 20_____

No. **003342**

Control No. **095329**

### MOTION FOR TITLE OF VEHICLE

_____

(Please fill in information below)

United Auto Collision, a Pennsylvania Corporation with an office located at 3913 Germantown Ave, Philadelphia PA 19140 files this motion for Title of Vehicle as a contractor.

The owner of the property, subject to the motion is **Joan Coley,**

The date on which the claimant completed the work for which the claim is made was

_____

Claimant files this claim under a contract with **Joan Coley** dated _____ wherein claimant agreed to furnish all labor and materials required for alterations and repairs to a 2013 Toyota Corolla at United Auto Collision at 3913 Germantown Avenue, Phila PA 191140.  A true and correct copy of the aforesaid contract is annexed hereto as Exhibit "A"

RE:  2013 Toyota Corolla

VIN #2T1BU4EE5DC049845

The improvement and property claimed to be subject to the motion is $26,075

IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

*United Auto Collision*
*3913 Germantown Ave*
*Phila Pa 19140*       Plaintiff

v.

*Joan Coley*

:
:
:
:
:
:
:
:
:
:
:
:

SEPTEMBER 2019

_____ Term, 20_____
No. **003342**

Control No. **095329**

MEMORANDUM OF LAW
(Brief in support of Motion/Petition or Answer)

(Please fill in information below)

This motion is being filed pursuant to PA rule of civil procedure 208_3(B)

Repair Shop Policy:   All repairs must be paid in cash, certified check, or

Insurance check

All deductibles must be paid in full

Total repair bill must be paid in full before vehicle is released

Storage: $35 per day

745 days as of April 29, 2019: $26,075

<u>**VERIFICATION**</u>

I, _Lisa Tennyson_, Plaintiff/Defendant, verify that the facts set forth in the foregoing are true and correct to the best of my information, knowledge and belief.

I understand that the statements contained herein are subject to the Penalties of 18 Pa.C.S.A., Section 4904 relating to unsworn falsification to authorities.

_Lisa Tennyson_
(Print Name)

_(signature)_
(Signature)

Date: _9/9/19_ _9/29/19_
    _4/29/19_

### CERTIFICATION OF SERVICE

I, _Lisa Tennyson_, hereby certify that a true and correct copy of the
foregoing Motion/Petition and accompanying papers, was served on the below listed addresses by First-Class
United States mail, postage pre-paid on _____(date):

Name: _JOAN Coley_

Address: _▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓_

Address: _▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓_

City, State, Zip Code: _▓▓▓▓▓▓▓▓▓_

Name: _TOYOTA LEASE TRUST_

Address: _260 INTERSTATE NORTH_

Address: _____

City, State, Zip Code: _ATLANTA, GA 30339_

Name: _____

Address: _____

Address: _____

City, State, Zip Code: _____

Date: _4/29/19_

By: _[signature]_



RUN BY:  NL                                                                  PAGE:  1
PROC DATE: 04/18/2019
JARI AUTO TAGS

**PENN DOT * NOT VALID FOR LIEN VERIFICATION PURPOSES ***
============================================================================

OWNER: TOYOTA LEASE TRUST              LESSEE:   COLEY, JOAN MATILDA
        260 INTERSTATE NORTH
        ATLANTA, GA  30339

TENANT W/ SURVIVORSHIP:  No           UNCLAIMED MAIL CODE: 0
COUNTY:                  00           I/M REQUIRED:        1
RETIRED:                 No           DISABLED VET:        0

TITLE NUMBER:            72040244TO0   TITLE DATE:          05/20/2013
DEALER TITLE:                          DUPLICATE TITLE CNT: 00

TAG NUMBER:             JGT8321        CUSTOM PLATE:
VIN:                    2T1BU4EE5DC049845  EXPIRATION DATE:    04/30/2014
VEHICLE YEAR:           2013           BODY TYPE:           SEDAN
                                       REG YEAR:            01
MAKE:                   TOYO           ODOMETER READING:    25
MODEL:                  CBS             *ACTUAL MILEAGE
FUEL:                   GASOLINE

PURCHASE DATE:                         STATE OF ORIGIN:
PREVIOUS WID:                          PREVIOUS TAG:
STOLEN DATE:

GVWR:                                  GCWR:
RRGW:                   000000         RRGCW:               000000
UNLADEN WT:             0              WEIGHT CLASS:        00

AXLES:                                 SEATS:
AXLE WT RATING:                        AXLE TAX:
O/S TIRES:

TITLE BRAND INFORMATION
ABANDON:                               LEMON:
JUNK:                   0
OTHER BRANDS:

LIENS:        No                       ELT:          No

STOPS:        No

----------------------------------------------------------------------

United Auto Collision, Inc.
3913 Germantown Avenue
Philadelphia, PA 19140
215-227-4150
UnitedAutoCollision1@Gmail.com

April 29, 2019

Joan Coley


RE: VIN #2T1BU4EE5DC049845

Dear Ms. Coley,

This letter serves as final notice that we plan to go forward with our filing for the Pennsylvania Title for this vehicle that we've had in our possession since February 15, 2017. To date the total amount due is $26,075 for 745 days of storage ($35 per day as of today, accruing daily).

We hereby give ten (10) days notice to provide vehicle title, or pay in full the entire balance due.

Sincerely,


Lisa A. Tennyson
General Manager
United Auto Collision


LAT/me

CC: Michael Gessner, Legal Counsel for United Auto Collision
     Toyota Lease Trust, Lienholder

LE

_egal Notices_

5    A
15:00    7967
         10.14



ORIGIN ID:MGEA
SECURE TITLE ADMINISTRATION INC
2875 BRECKINRIDGE BLVD
SUITE 200
DULUTH, GA 30096
UNITED STATES US

SHIP DATE: 11OCT19
ACTWGT: 0.20 LB
CAD: 733489/CAFE3211

BILL THIRD PARTY

TO  CHLOE NELSON/ LAKESHA BATTLE
TOYOTA FINANCIAL SERVICES
6565 HEADQUARTE

PLANO TX 7502459

REF:

Tracking No:
SGBX000027S5584

Chloe Nelson
W2-5A-12h
Received Date:
2018-10-14-28
Last Action:
10-14-28/9 07:18am
/-4 07:18:30

CUSTOMER DETAILS

NA

MON − 14 OCT 3:00P
STANDARD OVERNIGHT

TRK#
0201   4529 3702 7967

SE PNXA

75024
TX−US  DFW

EXHIBIT "I"

This is a Copy of the Customer Completed signed electronic form held by RouteOne LLC.

**𝕃𝔸𝕎 553-PA-ARB-ea 12/14**

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
### (WITH ARBITRATION PROVISION)

Dealer Number ____0000037152____   Contract Number  RR-3-145495EC7296501

| Buyer Name and Address (Including County and Zip Code)<br>NADER RIZK | Co-Buyer Name and Address (Including County and Zip Code)<br>N/A | Seller-Creditor (Name and Address)<br><br>6101 AUTOMOTIVE, INC.<br>1546 COTTMAN AVENUE<br>PHILADELPHIA, PA 19111 |
|---|---|---|

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Mfg Gross Vehicular Weight | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| Used | 2014 | Toyota Camry | N/A | 4T1BF1FK8EU812406 | Personal, family, or household unless otherwise indicated below<br>☐ business  ☐ agricultural  ☐ N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $0.00 is |
|---|---|---|---|---|
| 7.99 % | $ 4,913.57 | $ 18,457.63 | $ 23,371.20 | $ 23,371.20 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 324.60 | Monthly beginning 10/19/2018 |
| N/A | N/A | N/A |

Or As Follows:

N/A

**Late Charge.** If payment is not paid in full within 10 days after it is due, you will pay a late charge. If the vehicle is a heavy commercial motor vehicle, the charge will be 4% of the part of the payment that is late. Otherwise, the charge will be 2% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**Returned Check Charge:** You agree to pay the costs we actually pay to others if any check you give us is dishonored.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 6 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _A A'RL_

Co-Buyer Signs X _A_            N/A

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

True and Accurate Completed Copy · UCC Non-Authoritative Copy

This is a Copy of the Customer Completed signed electronic form held by RouteOne LLC.

**ITEMIZATION OF AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)**

1  Cash Price

| | | |
|---|---|---|
| Vehicle | $ | 15,995.00 |
| Accessories and Installation | $ | N/A |
| Government Taxes | $ | 1,279.60 |
| Vehicle Delivery | $ | N/A |
| to N/A                    for N/A | $ | N/A |
| to N/A                    for N/A | $ | N/A |
| to N/A                    for N/A | $ | N/A |
| to N/A                    for N/A | $ | N/A |
| to N/A                    for N/A | $ | N/A |
| to N/A                    for N/A | $ | N/A |
| to N/A                    for N/A | $ | N/A |
| | $ | 17,274.60 (1) |

2  Total Downpayment =

Trade-in  2018    Toyota              RAV4
          (Year)    (Make)              (Model)
Trade-In          2T3RFREV4JW710000
                          (VIN)

| | | |
|---|---|---|
| Gross Trade-In Allowance | $ | 14,000.00 |
| Less Pay Off Made By Seller | $ | 14,875.48 |
| Equals Net Trade In | $ | -875.48 |
| + Cash | $ | N/A |
| + Other  N/A | $ | N/A |
| (If total downpayment is negative, enter "0" and see 4H below) | $ | 0.00 (2) |

3  Unpaid Balance of Cash Price (1 minus 2)  $  17,274.60 (3)

4  Other Charges Including Amounts Paid to Others on Your Behalf

A  Cost of Optional Credit Insurance Paid to Insurance
   Company or Companies

| | | | | | |
|---|---|---|---|---|---|
| Life N/A | Term | N/A | $ | N/A | |
| Disability N/A | Term | N/A | $ | N/A | $     N/A |

B  Other Optional Insurance Paid to Insurance Company or Companies

| | | | | |
|---|---|---|---|---|
| (Describe) N/A | | Term | N/A | $     N/A |
| (Describe) N/A | | Term | N/A | $     N/A |

C  Official Fees Paid to Government Agencies

| | | |
|---|---|---|
| to N/A                    for N/A | $ | N/A |
| to N/A                    for N/A | $ | N/A |
| to N/A                    for N/A | $ | N/A |

D  Optional Gap Contract                                           $    N/A

E  Government Taxes Not Included in Cash Price        $    N/A

F  Government License and/or Registration Fees
   License and Registration Fee                              $    95.00

G  Government Certificate of Title Fees
   (includes $    N/A    security interest recording fee)   $    94.55

H  Other Charges (Seller must identify who is paid and
   describe purpose)

| | | |
|---|---|---|
| to TFS              for Prior Credit or Lease Balance | $ | 875.48 |
| to Dealer          for Documentation Fee | $ | 118.00 |
| to N/A              for N/A | $ | N/A |
| to N/A              for N/A | $ | N/A |
| to N/A              for N/A | $ | N/A |
| to N/A              for N/A | $ | N/A |
| to N/A              for N/A | $ | N/A |
| to N/A              for N/A | $ | N/A |
| Total Other Charges and Amounts Paid to Others on Your Behalf | $ | 1,183.03 (4) |

| | | |
|---|---|---|
| 5  Amount Financed (3 + 4) | $ | 18,457.63 (5) |
| 6  Finance Charge | $ | 4,913.57 (6) |
| 7  Total of Payments-Time Balance (5 + 6) | $ | 23,371.20 (7) |

---

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before _____N/A_____ , Year _N/A_ .

SELLER'S INITIALS _____N/A_____

---

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term ___N/A___ Mos.  _____
                                    Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X **C**                    N/A

---

**If you do not meet your contract obligations, you may lose the vehicle.**

True and Accurate Completed Copy - UCC Non-Authoritative Copy

True and Accurate Completed Copy - UCC Non-Authoritative Copy

## OTHER IMPORTANT AGREEMENTS

### 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

### 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, to the extent permitted by law you agree to repay the amount when we ask for it.

**c. Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our entire interest in the vehicle as well as yours. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we will buy insurance that covers your interest and our interest in the vehicle. We will tell you the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

### 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on page 1. The term "heavy commercial motor vehicle" means any new or used motor vehicle, excluding a recreational vehicle, which is (i) a truck or truck tractor having a manufacturer's gross vehicular weight of thirteen thousand (13,000) pounds or more, or (ii) a semi-trailer or trailer designed for use in combination with a truck or truck tractor. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
- You do not pay any payment on time;
- You give false or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If you default and we have to go to court to recover the vehicle, you will pay the reasonable attorney's fees and court costs as the law permits. You will also pay any attorney's fees and court costs a court awards us.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

True and Accurate Completed Copy - UCC Non-Authoritative Copy

This is a Copy of the Customer Completed signed electronic form held by RouteOne LLC.

True and Accurate Completed Copy · UCC Non-Authoritative Copy

e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may get it back by paying the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any other amounts lawfully due under the contract (redeem). Your right to redeem ends when we sell the vehicle. We will tell you how much to pay to redeem.

If we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). We will tell you if you may reinstate and how much to pay if you may.

If you are in default for more than 15 days when we take the vehicle, the amount you must pay to redeem or reinstate will also include the expenses of taking the vehicle, holding it, and preparing it for sale.

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, or, at our option, reinstate, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, as the law allows. Reasonable attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you may have to pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, mainte-nance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

h. **Summary Notice Regarding Prepayment, Rebate of Finance Charge and Reinstatement: You may prepay all or part of the amount you owe under this contract without penalty. If you do so, you only have to pay the earned and unpaid part of the finance charge and all other amounts due up to the date of your payment. Unearned finance charges will not be rebated under this contract because there will never be any unearned finance charges to rebate. If you default and we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and expenses (reinstate).**

4. **WARRANTIES SELLER DISCLAIMS**
The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. The following paragraph also does not apply at all if you bought the vehicle primarily for personal, family, or household use.

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

5. **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

6. **SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

7. **RIGHT TO RECEIVE STATEMENT OF ACCOUNT**
Upon your request, we will provide you a statement of account that shows information about your payment history including any charges and credits to your account. It will also show amounts that are due at the time of your request and information regarding future payments. We will provide you one statement of account at no cost. We may charge you your reasonable costs for any additional statements requested, as the law allows. Your right to receive a statement of account ends one year after termination of the contract.

8. **ADDITIONAL RIGHTS**
If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.

9. **APPLICABLE LAW**
Federal law and the law of the state of the Seller's address shown on page 1 of this contract apply to this contract.

True and Accurate Completed Copy · UCC Non-Authoritative Copy

*LAW 553-PA-ARB-ea 12/14 v1*   Page 4 of 6

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked in this box, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign in this box:**
**Optional Credit Insurance**

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both
Premium:

Credit Life $ _____ N/A

Credit Disability $ _____ N/A
Insurance Company Name
N/A
Home Office Address
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance pays the unpaid part of the Amount Financed if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance pays the scheduled payments due under this contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life insurance or credit disability insurance provides. See the policies or certificates for coverage limits or other terms and conditions.

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

**Other Optional Insurance**

☐ _____ N/A _____ N/A
Type of Insurance     Term
Premium $ _____ N/A
Description of Coverage
_____ N/A _____
Insurance Company Name
_____ N/A _____
Home Office Address
_____ N/A _____

☐N/A _____ N/A
Type of Insurance     Term
Premium $ _____ N/A
Description of Coverage
_____ N/A _____
Insurance Company Name
_____ N/A _____
Home Office Address
_____ N/A _____

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked in this box.

X D          N/A          N/A
Buyer Signature                         Date
X D          N/A          N/A
Co-Buyer Signature                      Date

**NO COOLING OFF PERIOD**
**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs X E ✗ℰℛ _____ Co-Buyer Signs X E _____ N/A
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
You authorize us to obtain information about you, or the vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.
See the rest of this contract for other important agreements.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**NOTICE TO BUYER. DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREUNDER.**
Buyer Signs X F ✗ℛ _____ Date 09/04/2018  Co-Buyer Signs X F _____ N/A _____ Date _ N/A

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision on page 6, before signing below. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs X G ✗ℛ _____ Date 09/04/2018  Co-Buyer Signs X G _____ N/A _____ Date _ N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____ N/A _____ Address _____ N/A
Seller Signs _____ 6101 AUTOMOTIVE, INC. _____ Date 09/04/2018  By X H ✎ _____ Title Finance

True and Accurate Completed Copy · UCC Non-Authoritative Copy
True and Accurate Completed Copy · UCC Non-Authoritative Copy

This is a Copy of the Customer Completed signed electronic form held by RouteOne LLC.

True and Accurate Completed Copy - UCC Non-Authoritative Copy

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

| Seller assigns its interest in this contract to | Toyota Motor Credit Corporation | | (Assignee) under the terms of Seller's agreement(s) with Assignee. |
|---|---|---|---|
| ☐ Assigned with recourse | ☒ Assigned without recourse | | ☐ Assigned with limited recourse |

| Seller | 6101 AUTOMOTIVE, INC. | By | _(signature)_ | Title | Finance |
|---|---|---|---|---|---|

**iLAW** FORM NO. 553-PA-ARB-ea  (REV. 12/14)   U.S. PATENT NO. D460,782
©2014 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

T210794809-DP210794810 - This copy was created on Tue Sep 04 08:00:09 GMT 2018

True and Accurate Completed Copy - UCC Non-Authoritative Copy

EXHIBIT "J"

PHILADELPHIA COURT OF COMMON PLEAS
PETITION/MOTION COVER SHEET

CONTROL NUMBER:
**105263**

*(RESPONDING PARTIES MUST INCLUDE THIS NUMBER ON ALL FILINGS)*

RECEIVED

**FOR COURT USE ONLY**

ASSIGNED TO JUDGE: _____ ANSWER/RESPONSE DATE: _____

*Do not send Judge courtesy copy of Petition/Motion/Answer/Response.
Status may be obtained online at http://courts.phila.gov*

~~OCTOBER 2019~~ Term,
Month

NUV 07 2019
Year

No. **003656**

TFS LEGAL DEPT.

*United Auto Collision
3913 Germantown Ave. Phila. Pa. 19140*

*Nadar Rizk* vs.

Name of Filing Party:
*United Auto Collision*

(Check one)  ☒ Plaintiff  ☐ Defendant
(Check one)  ☒ Movant  ☐ Respondent

Has another petition/motion been decided in this case? ☐ Yes ☒ No
Is another petition/motion pending? 

INDICATE NATURE OF DOCUMENT FILED:

☐ Petition (Attach Rule to Show Cause)   ☒ Motion
☐ Answer to Petition   ☐ Response to Motion

*If the answer to either question is yes, you must identify the judge(s):* ☐ Yes ☐ No

TYPE OF PETITION/MOTION *(see list on reverse side)*
**MOTION FOR TITLE OF VEHICLE**

PETITION/MOTION CODE
*(see list on reverse side)*
*MTFTV*

ANSWER/RESPONSE FILED TO *(Please insert the title of the corresponding petition/motion to which you are responding):*

**I. CASE PROGRAM**
Is this case in *(answer all questions)*:
A. COMMERCE PROGRAM
Name of Judicial Team Leader: _____
Applicable Petition/Motion Deadline: _____
Has deadline been previously extended by the Court?
☐ Yes ☐ No
B. DAY FORWARD/MAJOR JURY PROGRAM — Year _____
Name of Judicial Team Leader: _____
Applicable Petition/Motion Deadline: _____
Has deadline been previously extended by the Court?
☐ Yes ☐ No
C. NON JURY PROGRAM
Date Listed: _____
D. ARBITRATION PROGRAM
Arbitration Date: _____
E. ARBITRATION APPEAL PROGRAM
Date Listed: _____
F. OTHER PROGRAM: _____
Date Listed: _____

**II. PARTIES** (required for proof of service)
(Name, address and *telephone number* of all counsel of record and unrepresented parties. Attach a stamped addressed envelope for each attorney of record and unrepresented party.)

*Toyota Motor Credit.*

704 027 67835880001 - Closed
4T1BF1FK8EU812406

**III. OTHER**
By filing this document and signing below, the moving party certifies that this motion, petition, answer or response along with all documents filed, will be served upon all counsel and unrepresented parties as required by rules of Court (see PA. R.C.P. 206.6, Note to 208.2(a), and 440). Furthermore, moving party verifies that the answers made herein are true and correct and understands that sanctions may be imposed for inaccurate or incomplete answers.



_____   10/28/19   *Michael Gessner*   45970
*(Attorney Signature/Unrepresented Party)*   *(Date)*   *(Print Name)*   *(Attorney I.D. No.)*

The Petition, Motion and Answer or Response, if any, will be forwarded to the Court after the Answer/Response Date. No extension of the Answer/Response Date will be granted even if the parties so stipulate.

30-1061 (Rev. 6/2014)

United Auto Collision Vs Rizk-PTFTV

19100365600003

The First Judicial District's Website: http://courts.phila.gov.

IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

*United Auto Collesin*
*3913 Germentown Ave*
*Phila PA 19140*   Plaintiff/Petitioner
:
:                    OCTOBER 2019
:
v.                   :            ~~003656~~ Term, 20____
:
*Nader Rizk*         :            No._____
:
                     :            Control No._____ **105263**
ondent               :

## RULE

AND NOW, this ____ day of _____, ____, upon consideration of the

foregoing ~~Motion~~/Petition *Vehicle TItle* _____

_____

_____, a RULE is hereby entered upon the Respondent to show cause why the relief requested

therein should not be granted.

RULE RETURNABLE on the _____ day of _____, ____, at

_____ a.m./p.m., in Courtroom _____, City Hall, Philadelphia, PA 19107.


BY THE COURT:


_____
                                    J.

The First Judicial District's Website: http://courts.phila.gov.

### IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
### FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### TRIAL DIVISION – CIVIL

United Auto Collesion
3913 Germantown Ave
Phila Pa 19140          Plaintiff/Petitioner

v.

Nader Rizk                                              Respondent

OCTOBER 2019

003656 Term, 20_____

No._____

Control No._____ 105263

## RULE

AND NOW, this ____ day of _____, _____, upon consideration of the foregoing Motion/Petition _Vehicle. Title_ _____

_____

_____, a RULE is hereby entered upon the Respondent to show cause why the relief requested therein should not be granted.

RULE RETURNABLE on the _____ day of _____, _____, at _____ a.m./p.m., in Courtroom _____, City Hall, Philadelphia, PA 19107.

BY THE COURT:

_____
                                        J.

IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

*United Auto Collision*                    :        OCTOBER 2019
*3913 Germantown Ave*               :
*Phila Pa 19140*        Plaintiff      :        ~~003650~~ rm, 20___
                                                       :        No._____
        v.                                             :
*Nader Rizk*                                     :
                                                       :        Control No. ~~105263~~
_____ efendant      :

## MOTION FOR TITLE OF VEHICLE

(Please fill in information below)

United Auto Collision, a Pennsylvania Corporation with an office located at 3913 Germantown
Ave, Philadelphia PA 19140 files this motion for Title of Vehicle as a contractor.

The owner of the property, subject to the motion is **Nader Rizk,** ▇▇▇▇▇▇▇▇▇▇▇▇▇

Claimant files this claim under an illegally parked vehicle, towed from contract from Sugarhouse
Casino.

RE:  2014 Toyota Camry

VIN #4T1BF1FK8EU812406

The improvement and property claimed to be subject to the motion is $12,964

IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

*United Auto Collision*
*3913 Germantown Avenue*
*Phila Pa 19140*  Plaintiff

v.

*NADER RIZK*

Defendant

:
:
:
:
:
:
:
:
:
:
:
:

OCTOBER 2019

_____ Term, 20_____

No._____

Control No. *105263*

MEMORANDUM OF LAW
(Brief in support of Motion/Petition or Answer)

(Please fill in information below)

This motion is being filed pursuant to PA rule of civil procedure 208_3(B)

Repair Shop Policy:   All repairs must be paid in cash, certified check, or

Insurance check

All deductibles must be paid in full

Total repair bill must be paid in full before vehicle is released

Towing Bills & Storage must be paid in full before vehicle is released

Storage: $45 per day @ 232 days as of October 24, 2019

## VERIFICATION

I, _Lisa Tennyson_ , Plaintiff/Defendant, verify that the facts set forth in the foregoing are true and correct to the best of my information, knowledge and belief.

I understand that the statements contained herein are subject to the Penalties of 18 Pa.C.S.A., Section 4904 relating to unsworn falsification to authorities.

_LisA Tennyson_
(Print Name)

_[signature]_
(Signature)

Date: _10/25/19_

<u>**CERTIFICATION OF SERVICE**</u>

I, _Lisa Tennyson_____, hereby certify that a true and correct copy of the foregoing Motion/Petition and accompanying papers, was served on the below listed addresses by First-Class United States mail, postage pre-paid on _____(date):

Name: _NADER Rizk_____

Address: _____

Address: _____

City, State, _____

Name: _Toyota Motor Credit___

Address: _P.O. Box 105386____

Address: _____

City, State, Zip Code: _Atlanta GA 30348_

Name: _____

Address: _____

Address: _____

City, State, Zip Code: _____

Date: _10/25/19_        By: _____

Sep 25 19, 05:15p       JARI TAGS                           2153902278                        p.1

RUN BY: NL
PROC DATE: 09/25/2019                                                        PAGE: 1
JARI AUTO TAGS 2
PENN DOT * NOT VALID FOR LIEN VERIFICATION PURPOSES *
================================================================

OWNER:RIZK,NADER Y                          LESSEE:

TENANT W/ SURVIVORSHIP: No          UNCLAIMED MAIL CODE: 0
COUNTY:                PHILADELPHIA  I/M REQUIRED:           1
RETIRED:               No           DISABLED VET:           0

TITLE NUMBER:          73368680RI0  TITLE DATE:        05/30/2014
DEALER TITLE:                       DUPLICATE TITLE CNT:    00

TAG NUMBER:            31434PD       CUSTOM PLATE:
VIN:                  4T1BF1FK8EU812406  EXPIRATION DATE:  08/31/2020
VEHICLE YEAR:         2014          BODY TYPE:          SEDAN
                                    REG YEAR:           02
MAKE:                 TOYO          ODOMETER READING:   34174
MODEL:                CAM           *ACTUAL MILEAGE
FUEL:                 GASOLINE

PURCHASE DATE:        09/04/2018    STATE OF ORIGIN:
PREVIOUS WID:                       PREVIOUS TAG:       KMA8654
STOLEN DATE:

GVWR:                               GCWR:
RRGW:                 000000        RRGCW:              000000
UNLADEN WT:           0             WEIGHT CLASS:       00

AXLES:                              SEATS:
AXLE WT RATING:                     AXLE TAX:
O/S TIRES:

TITLE BRAND INFORMATION
ABANDON:                            LEMON:
JUNK:                 0
OTHER BRANDS:

LIENS:                Yes           ELT:                Yes
LIENHOLDER 1:                       LIENHOLDER 2: 09/17/2024
          TOYOTA MOTOR CREDIT CORPORATION
          PO BOX 105386
          ATLANTA GA 30348
          FIN: 95377581601

STOPS:                No



 Gmail

Joseph Aviv <unitedautocollision1@gmail.com>

**Illegally Parked car at Sugarhouse**
1 message

**Joseph McFadden** <jmcf433@gmail.com>                                    Thu, Mar 7, 2019 at 5:40 PM
To: unitedautocollision1@gmail.com

2014 Toy Camry.  RED
PA.  31443P/D
VIN # 4T1BFIFK8EU812406

TBR # 48651151-2
12:30pm  7 MAR 19
BADGE. 3455
TOW AUTH.  128

**United Auto Collision, Inc.**
3913 Germantown Avenue
Philadelphia, PA 19140
215-227-4150
UnitedAutoCollision1@Gmail.com

October 25, 2019

Toyota Motor Credit
P.O. Box 105386
Atlanta, GA  30348

RE:  VIN #3VW2K7AJ7EM314183

This letter serves as final notice that we plan to go forward with our filing for the Pennsylvania Title for this vehicle in our possession since January 4, 2019.  To date the total amount due is $16,206.75 for 294 days of storage ($45 per day as of today, accruing daily) as of this date, plus 22.5% Philadelphia Parking Tax.

We hereby give ten (10) days notice to provide vehicle title, or pay in full the entire balance due.

Sincerely,


Lisa A. Tennyson
General Manager
United Auto Collision

LAT/me

CC:  Michael Gessner, Legal Counsel for United Auto Collision
        Nader Rizk, Registered Owner

**United Auto Collision, Inc.**
3913 Germantown Avenue
Philadelphia, PA 19140
215-227-4150
UnitedAutoCollision1@Gmail.com

October 25, 2019

Nader Rizk



RE: VIN #3VW2K7AJ7EM314183

This letter serves as final notice that we plan to go forward with our filing for the Pennsylvania Title for this vehicle in our possession since January 4, 2019. To date the total amount due is $16,206.75 for 294 days of storage ($45 per day as of today, accruing daily) as of this date, plus 22.5% Philadelphia Parking Tax.

We hereby give ten (10) days notice to provide vehicle title, or pay in full the entire balance due.

Sincerely,

Lisa A. Tennyson
General Manager
United Auto Collision

LAT/me

CC: Michael Gessner, Legal Counsel for United Auto Collision
    Toyota Motor Credit, Lienholder

LE

Legal Notices

Align top of FedEx Express® shipping

ORIGIN ID:MGEA
SECURE TITLE ADMINISTRATION INC
2975 BRECKINRIDGE BLVD
SUITE 200
DULUTH, GA 30096
UNITED STATES US

SHIP DATE: 06NOV19
ACTWGT: 0.40 LB
CAD: 733489/CAFE3211

BILL THIRD PARTY

TO CHLOE NELSON/ LAKESHA BATTLE
TOYOTA FINANCIAL SERVICES
6565 HEADQUARTERS DRIVE W2—5A

PLANO TX 750245965

REF:



FedEx
Express

E

TRK# 4529 3703 0194
0201

THU – 07 NOV 3:00P
STANDARD OVERNIGHT

AD PNXA

75024
TX-US DFW

CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the United Judicial System of Pennsylvania:  Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

**THOMSON, RHODES & COWIE, P.C.**

By _____
     Steven B. Kantrowitz, Esquire
     Attorneys for plaintiffs